OPINION
{¶ 1} Appellant, SR, appeals from judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, terminating her parental rights and awarding permanent custody of her two daughters to Franklin County Children Services ("FCCS"). In this consolidated appeal of both determinations, appellant assigns a single error:
THE TRIAL COURT'S DECISION TO GRANT FRANKLIN COUNTY CHILDREN SERVICE[']S MOTION FOR PERMANENT CUSTODY OF BOTH [APPELLANT'S] CHILDREN IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Because competent, credible evidence supports the trial court's award of permanent custody, we affirm.
 {¶ 2} On April 1, 2001, FCCS removed appellant's daughter, JD, from appellant's care and filed a complaint on April 10 to have the child declared neglected and/or dependent. On June 26, 2001, JD was found to be a dependent and neglected child and eventually was placed with her current foster mother. On April 11, 2003, FCCS filed a motion for permanent custody of JD.
 {¶ 3} Appellant's most recent child, OJ, was born on November 17, 2003. Two days after OJ's birth, FCCS moved for temporary custody as a result of appellant's testing positive for cocaine during her eighth month of pregnancy. On November 19, 2003, OJ was placed in the same foster home as her half-sister, JD. On January 11, 2005, FCCS moved for permanent custody of OJ.
 {¶ 4} On January 4 and 5, 2005, a hearing was held regarding the permanent custody of JD; on February 9, 2005, a similar hearing was held regarding OJ in which all previous testimony from JD's hearing was incorporated into OJ's case. Following the hearings, the trial court granted FCCS' motions for permanent custody of JD and OJ. In her single assignment of error, appellant contends the record does not support the trial court's judgments.
 {¶ 5} The record facts are not seriously disputed, as appellant failed to appear or testify at any of the hearings. After JD was removed from appellant's custody, FCCS devised a case plan to attempt appellant's reunification with JD. The case plan required appellant to provide for the basic care and safety of JD, successfully attend parenting classes and demonstrate knowledge of parenting techniques, maintain stable housing, complete a psychological evaluation and follow the recommendations, complete a drug and alcohol assessment and follow the recommendations, complete random drug screens, and seek individual counseling in connection with domestic violence issues. Appellant was allowed one hour per week of supervised visitation to take place at FCCS. Once OJ also was removed from appellant's care, the case plan applied to reunification attempts with both daughters.
 {¶ 6} At the January 4 hearing, caseworker Rosann Gingerich testified that appellant completed a number of aspects of her case plan. Specifically, appellant maintained stable housing, completed two sets of parenting classes, attended a domestic violence program at "Choices," completed a psychological assessment, and eliminated various safety concerns within appellant's home. Gingerich did not know whether appellant was employed, but stated appellant did not produce evidence of employment, even part-time, to Gingerich at any time. Although appellant did not complete individual counseling for domestic violence, Gingerich was not aware of any reported incidents of domestic violence since 2001.
 {¶ 7} Gingerich observed appellant during a limited number of supervised visitations, as the size of FCCS' caseload requires that it employ aides to supervise parent visits. From her observations, Gingerich testified appellant's initial attendance at the visitation sessions was not consistent, and appellant failed, at times, to give advance notice of her absence. After the initial visits, appellant was more consistent in attending the scheduled visits. Gingerich testified that appellant was, for the most part, appropriate with her children during the visits: appellant read to her children, assisted with JD's homework, and cleaned up after her children on most occasions. Appellant also was able to play at a child's level with them. Gingerich's only concern was that appellant fed OJ, eight months old at the time, some fries and chips. Overall, Gingerich stated the visits went well.
 {¶ 8} Of primary concern to FCCS and Gingerich was appellant's cocaine abuse. Because appellant tested positive for cocaine when she was eight months pregnant with OJ, the case plan required appellant to submit to random drug screens and complete a 12-week rehabilitation program. Gingerich testified that since she became the caseworker for OJ and JD in February 2002, 110 random drug screens were given to appellant. Of those, appellant sent back 22; 21 were negative, and one was positive for cocaine. Prior to Gingerich becoming the caseworker, appellant was given 91 drug screens. Only 32 of those were returned; 31 were negative and one was positive. Since 2001, appellant has been given approximately 200 drug screens; appellant returned a little over 50 of them, or about 25 percent. Significantly, in 2004, appellant was given 65 drug screens; appellant completed only four, or less than six percent. In addition, although appellant attended a 12-week program to address her drug abuse problem, she never was formally released from the program.
 {¶ 9} As appellant correctly asserts, the right to rear a child is a basic and essential civil right. In re Hayes (1997),79 Ohio St.3d 46. A parent must be given every procedural and substantive protection the law allows prior to terminating that parent's rights to the child. Id. Due process includes a hearing upon adequate notice, assistance of counsel, and under most circumstances, the right to be present at the hearing. In reThompson (Apr. 26, 2001), Franklin App. No. 00AP-1358.
 {¶ 10} In order to terminate appellant's parental rights, FCCS was required to demonstrate by clear and convincing evidence that (1) one of the four factors enumerated in R.C.2151.414(B)(1) applies; and (2) termination is in the child's best interests. In re Gomer, Wyandot App. No. 16-03-19,2004-Ohio-1723. Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. In re Abram, Franklin App. No. 04AP-220, 2004-Ohio-5435. It does not mean the evidence must be clear and unequivocal and does not require proof beyond a reasonable doubt. Id.
 {¶ 11} On appellate review, "[p]ermanent custody motions supported by some competent, credible evidence going to all the essential elements of the case will not be reversed * * * as against the manifest weight of the evidence." In re Brown,
Franklin App. No. 03AP-969, 2004-Ohio-3314, at ¶ 11, citing Inre Brofford (1992), 83 Ohio App.3d 869; Abram, supra. Further, in determining whether a judgment is against the manifest weight of the evidence, the reviewing court is guided by the presumption that the findings of the trial court are correct. Brofford,
supra, citing Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. at 80; Abram, supra. Here, competent, credible evidence supports the trial court's judgment awarding permanent custody of JD and OJ to FCCS.
 {¶ 12} To establish one of the four factors outlined in R.C.2151.414(B)(1), FCCS relied upon R.C. 2151.414(B)(1)(d), which provides that a court may grant permanent custody if the "child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 13} FCCS removed JD from appellant's care on April 1, 2001, and JD remained in FCCS custody; FCCS filed a motion for permanent custody of JD on April 11, 2003. OJ was removed from appellant's care on November 19, 2003, and remained in FCCS custody; FCCS filed a motion for permanent custody of OJ on January 11, 2005. Thus, at the time FCCS filed the respective motions for permanent custody, both children had been in the custody of FCCS for 12 or more months of a consecutive 22-month period; appellant does not dispute that conclusion. Although the trial court specifically so found regarding JD, it did not regarding OJ; the record nonetheless supports such a finding. Accordingly, R.C. 2151.414(B)(1)(d) is met as to both children.
 {¶ 14} The record further supports a finding that the conditions of R.C. 2151.414(B)(1)(a) are met in that the children could not be returned to appellant in a reasonable period of time. Although appellant completed many aspects of her case plan, she repeatedly failed for a number of years to complete a significant aspect of her case plan: she failed to submit the required drug screens, including the year 2004 in which appellant completed less than six percent of the screens. Failure to complete significant aspects of a case plan despite opportunities to do so is grounds for terminating parental rights. In reM.L.J., Franklin App. No. 04AP-152, 2004-Ohio-4358; Brofford,
supra (holding "non-compliance with a case plan is a ground for termination of parental rights"); In re Bailey (July 20, 2001), Geauga App. No. 2001-G-2340 (stating that non-compliance with a case plan is a basis for terminating parental rights as the case plan is designed to remedy the conditions causing the child's removal from the home); In re Carr, Stark App. No. 2004-CA-00256, 2004-Ohio-6144 (noting mother did not comply with the case plan, as she failed to follow up with psychological counseling and failed to comply with the required random urine screens).
 {¶ 15} Because the evidence supports a finding under either R.C. 2151.414(B)(1)(a) or (d), the issue resolves to whether an award of permanent custody is in the children's best interests, a determination that must be supported by clear and convincing evidence. In assessing the best interests of the child, the court is to consider all relevant factors, including, but not limited to, the following: (1) the interaction and inter-relationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in divisions (E)(7) to (11) apply in relation to the parents and child.
 {¶ 16} In examining the best interests of the children under the foregoing parameters, the trial court concluded that unsuccessful efforts at reunification left the children in need of a legally secure placement that could not be achieved without awarding permanent custody to FCCS. The trial court further found a reasonable probability of adoption based on the foster mother's willingness and ability to adopt the children. Although the trial court determined JD to some degree was bonded to appellant, the court found JD was bonded more strongly with her foster mother; OJ was too young to express an opinion. Recognizing appellant's significant progress with some of the case plan's requirements, the trial court nonetheless determined that appellant's repeated failure to submit drug screens demonstrated appellant's lack of commitment to her children and warranted an award of permanent custody to FCCS.
 {¶ 17} The testimony of Gingerich and the guardian ad litem supports the trial court's determination. Specifically, Gingerich testified JD is very bonded to OJ and her foster mother and is doing well in the foster placement, and JD expressed her strong desire to remain with her foster mother. Although the testimony indicates JD interacted adequately with appellant during the supervised visits, JD quickly detached from appellant after the visit. OJ was too young to sufficiently evaluate her interaction with appellant or others and similarly was too young to express her desire regarding placement. The guardian ad litem, however, expressed his recommendation that both JD and OJ remain with their foster mother.
 {¶ 18} With respect to custodial history, JD has not lived with appellant since 2001. OJ was only two days old when she was removed from appellant's custody and placed in the same foster home as JD, where OJ has lived virtually her entire life. Further, because FCCS could not return the children to appellant due to her failure to address her drug problem, FCCS has had custody of the children for a substantial period of their lives, making a priority the children's need to procure a legally secure placement that may include adoption. The foster family is a possible adoptive placement for both children, and permanent custody would allow such a placement for JD and OJ.
 {¶ 19} Despite the evidence supporting the trial court's judgment, appellant essentially argues that because termination of parental rights is such a harsh remedy, appellant's rights should not be terminated. The record, however, makes clear that appellant unfortunately has a serious drug abuse problem that prevents her from being capable of appropriately caring for her children. Four years have elapsed from the time JD was removed, and appellant has not demonstrated an ability to address her problem and the children's need for a secure home. Indeed, JD and OJ are two of several children removed from appellant's care, and, knowing from prior experience the consequences of the hearing, appellant did not even appear.
 {¶ 20} Because the trial court's judgments are supported by the evidence in the record, we overrule appellant's single assignment of error and affirm the judgments of the trial court.
Judgments affirmed.
Petree and French, JJ., concur.