OPINION
{¶ 1} In these consolidated appeals, appellants Tamela W., Harold S., and Carol B., each appeal from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, awarding permanent custody of J.S. and C.S. to appellee, Franklin County Children Services ("FCCS"). For the following reasons, we affirm that judgment.
 {¶ 2} Tamela W. and Harold S. are the natural parents of three children: J.S., born on March 22, 1994; C.S., born on February 6, 2000; and, Co.S., born on August 1, 2001. Mother and father never married but currently live together. Carol B. and William B. are the children's paternal grandparents. For most of the first five years of his life, J.S. lived with his grandparents. His mother and father also lived with the grandparents on and off during this same timeframe. FCCS was not involved with this family until mother tested positive for cocaine when she gave birth to C.S.
 {¶ 3} Subsequently, FCCS filed a complaint on February 8, 2000, alleging that C.S. was a neglected and dependent child and requesting custody of C.S. The complaint alleged that mother tested positive for cocaine when she gave birth to C.S. On May 4, 2000, the trial court adjudicated C.S. a dependent child and awarded FCCS temporary custody of C.S. Neither mother or father contested the dependency adjudication. FCCS filed a similar complaint on May 5, 2000, alleging that J.S. was a neglected and dependent child and requesting custody of J.S. The complaint alleged that C.S. had been placed in the temporary custody of FCCS, and that mother and father had been kicked out of the house where they were living due to a domestic violence situation. On July 20, 2000, the trial court adjudicated J.S. a dependent child and awarded FCCS temporary custody of J.S. Again, mother and father did not contest the dependency adjudication.
 {¶ 4} The trial court approved and adopted FCCS' case plan for the reunification of the family. The plan required mother and father to address various areas of concern to FCCS. Significant requirements of the plan included: (1) the parents' participation in parenting and anger management classes; (2) domestic violence and drug and alcohol counseling; (3) establishment of stable housing and employment; (4) psychological evaluations and follow-up with any recommendations; (5) to refrain from criminal charges; and, (6) completion of random urine screens for drugs. The plan also required the grandparents to take anger management classes and to undergo a psychological evaluation and follow-up with any recommendations. All of the family members were to utilize the skills they learned at their classes.
 {¶ 5} After FCCS obtained temporary custody of her two children, mother gave birth to Co.S. Because mother was concerned that she would lose custody of Co.S. if FCCS became aware of the child, mother did not visit J.S. or C.S. or have any contact with FCCS for a year. Ultimately, FCCS became aware of Co.S. and sought temporary custody which was granted by the trial court.[1]
 {¶ 6} On August 2, 2001, FCCS filed motions for an award of permanent custody of both J.S. and C.S. pursuant to R.C.2151.413.[2] In affidavits attached to the motions, the FCCS social worker assigned to the family stated that both mother and father failed to substantially change the conditions that caused the children to be removed from their care and failed to make satisfactory progress on their case plan requirements. On October 16, 2001, grandparents filed motions to receive legal custody of J.S. and C.S. After a hearing, the magistrate found by clear and convincing evidence that an award of permanent custody to FCCS was in the best interest of both children. The magistrate also dismissed grandparents' motions for custody of the children. Mother and father timely filed objections to the magistrate's decision. Grandmother's untimely objections were nonetheless considered by the trial court. The trial court overruled all of the objections to the magistrate's decision. Accordingly, the trial court adopted the magistrate's decision, terminated the parents' parental rights, privileges, and obligations and awarded FCCS permanent custody of J.S. and C.S.
 {¶ 7} Appellants each appeal the trial court's award of permanent custody of the children to FCCS. In case numbers 05AP-615 and 05AP-616, mother assigns the following errors:
I. THE TRIAL COURT'S DECISION TERMINATING THE APPELLANT'S PARENTAL RIGHTS TO TWO OF HER THREE CHILDREN WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.
II. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY NOT APPOINTING COUNSEL FOR THE MINOR CHILDREN.
III. THE TRIAL COURT ERRED BY TERMINATING THE APPELLANT'S PARENTAL RIGHTS TO TWO OF THE THREE CHILDREN WHERE THE APPELLEE FAILED TO MAKE A REASONABLE EFFORT TO REUNIFY THE APPELLANT WITH HER CHILDREN.
 {¶ 8} In case numbers 05AP-622 and 05AP-623, grandmother assigns the following errors:
[I.] THE COURT ERRED IN FINDING THAT R.C. 2151.414 IS CONSTITUTIONAL.
[II.] THE COURT ERRED IN SUSPENDING GRAND-PARENTS' VISITATION BASED UPON A PSYCHOLOGIST[']S RECOMMENDATION WITHOUT A FULL DUE PROCESS HEARING.
[III.] THE DECISION TO DENY THE GRANDPARENTS['] LEGAL CUSTODY MOTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 9} Finally, in case numbers 05AP-627 and 05AP-628, father assigns the following errors:
[I.] THE TRIAL COURT'S DECISION GRANTING AN AWARD OF PERMANENT COURT COMMITMENT TO FRANKLIN COUNTY CHILDREN SERVICES IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
[II.] THE TRIAL COURT ERRED IN DIVESTING THE PARENTS OF THEIR PARENTAL RIGHTS WHEN CASE PLAN SERVICES HAD BEEN COMPLETED AND THE MAGISTRATE CONCEDED THAT THERE WAS NOTHING TO SUSTAIN A DEPENDENCY ACTION AGAINST THE THIRD CHILD, CO.S.
[III.] THE GRANTING OF AN AWARD OF PERMANENT COURT COMMITMENT TO FRANKLIN COUNTY CHILD-REN SERVICES IS NOT IN THE BEST INTEREST OF THE CHILDREN.
 {¶ 10} At the outset, we recognize that parents have a constitutionally protected fundamental interest in the care, custody, and management of their children. Santosky v. Kramer
(1982), 455 U.S. 745, 102 S.Ct. 1388; Troxel v. Granville
(2000), 530 U.S. 57, 66, 120 S.Ct. 2054. The Supreme Court of Ohio has recognized the essential and basic rights of a parent to raise his or her child. In re Murray (1990), 52 Ohio St.3d 155,157. These rights, however, are not absolute. In re Awkal
(1994), 95 Ohio App.3d 309, 315; In re Sims, Jefferson App. No. 02-JE-2, 2002-Ohio-3458, at ¶ 23. A parent's natural rights are always subject to the ultimate welfare of the child. In reCunningham (1979), 59 Ohio St.2d 100, 106. Thus, in certain circumstances, the state may terminate the parental rights of natural parents when necessary for the best interest of the child. In re Harmon (Sept. 25, 2000), Scioto App. No. 00CA-2694; In re Wise (1994), 96 Ohio App.3d 619, 624. The permanent termination of parental rights has been described as "`the family law equivalent of the death penalty in a criminal case.'" In re Hayes (1997), 79 Ohio St.3d 46, 48, quoting Inre Smith (1991), 77 Ohio App.3d 1, 16. Therefore, parents "`must be afforded every procedural and substantive protection the law allows.'" Id.
 {¶ 11} For ease of analysis, we will address appellants' assignments of error out of order. Grandmother's first assignment of error attacks the constitutionality of R.C. 2151.414(B)(1)(d). This court has consistently rejected this constitutional challenge to R.C. 2151.414(B)(1)(d). See In re C.C., Franklin App. No. 04AP-883, 2005-Ohio-5163, at ¶ 11-12 (R.C.2151.414[B][1][d] does not violate parents' due process rights under the Fourteenth Amendment to the United States Constitution); In re Abram, Franklin App. No. 04AP-220, 2004-Ohio-5435, at ¶ 12-13; In re Bray, Franklin App. No. 04AP-842, 2005-Ohio-1540, at ¶ 7-9; In re Brooks, Franklin App. No. 04AP-164, 2004-Ohio-3887, at ¶ 32. Given this precedent, we find that R.C. 2151.414(B)(1)(d) is not unconstitutional. Accordingly, grandmother's first assignment of error is overruled.
 {¶ 12} Grandmother contends in her second assignment of error that the trial court erred by terminating her visitation with J.S. without a hearing. The trial court suspended family visits with J.S twice during the proceedings. The first suspension was due to the family members' inappropriate, abusive behavior during a family visit. The second suspension was based on the recommendation of J.S.'s counselor due to J.S.'s violent behavior after visits. However, issues relating to the court's suspension of visitation during this case are now moot. In re C.C., supra, at ¶ 23-24. A case becomes moot if a judgment upon some matter cannot have any practical legal effect upon a then-existing controversy. Id., citing In re Brown, Franklin App. No. 03AP-1205, 2005-Ohio-2425, at ¶ 15.
 {¶ 13} This court cannot grant grandmother any relief with respect to the suspension of her visitation with J.S. We cannot give her back time to spend with the child. Id., quoting In reBailey, Hamilton App. No. C-040014, 2005-Ohio-3039, at ¶ 10. And, because we affirm the trial court's award of permanent custody to FCCS, grandmother no longer has any legal right to future visitation with J.S. Id. Therefore, we cannot grant any relief to grandmother. For these reasons, grandmother's second assignment of error is overruled as moot.
 {¶ 14} We move on to mother's second assignment of error. Mother contends that the trial court erred by failing to appoint independent counsel for J.S. and C.S. We first note that mother lacks standing to raise this issue on appeal. See In reJohnson, Franklin App. No. 03AP-1264, 2004-Ohio-3886, at ¶ 12. The trial court appointed a guardian ad litem for the children. Although the guardian ad litem did not testify in this matter, her report noted the wishes of both children to stay together and to be adopted by their foster parent. Because the children's wishes were inconsistent with those of the mother, who sought reunification, she lacks standing to assert as error the trial court's failure to appoint counsel for her children. Id. at ¶ 13.
 {¶ 15} Moreover, even if the mother had standing to assert this assignment of error, she has waived the issue. Mother never requested the trial court to appoint independent counsel to represent the children and never objected to the failure of the trial court to appoint such counsel. Mother raised this argument for the first time on appeal. "`Ordinarily, errors which arise during the course of a trial, which are not brought to the attention of the court by objection or otherwise, are waived and may not be raised upon appeal.'" Id. at ¶ 14, quoting StoresRealty Co. v. City of Cleveland, Bd. of Bldg. Standards Bldg.Appeals (1975), 41 Ohio St.2d 41, 43.
 {¶ 16} We recognize that in limited circumstances an appellate court may review an issue otherwise waived under the plain error doctrine. Id. at ¶ 14; In re Wright, Franklin App. No. 04AP-435, 2004-Ohio-4045, at ¶ 15. Applying that doctrine, "reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." Goldfuss v. Davidson (1997), 79 Ohio St.3d 116,121. Even if mother had standing to raise this issue, this is not the extreme case that mandates the application of the plain error doctrine to avoid a miscarriage of justice. In re Johnson,
supra, at ¶ 17. Mother's second assignment of error is overruled.
 {¶ 17} In mother's third assignment of error, she contends the trial court improperly awarded permanent custody because FCCS failed to make reasonable efforts to reunify her with her children. We disagree. In certain situations, a trial court must determine whether or not a public children services agency made "reasonable efforts" to reunify. R.C. 2151.419(A)(1). That finding, however, must be made only at hearings held pursuant to R.C. 2151.28, 2151.31(E), 2151.314, 2151.33, or 2151.353. See R.C. 2151.419(A)(1). FCCS requested an award of permanent custody of the children pursuant to R.C. 2151.413. The trial court held a hearing pursuant to R.C. 2151.414 to address FCCS' motions. Accordingly, the "reasonable efforts" requirement in R.C.2151.419 is not applicable to FCCS' motions for permanent custody. See In re S.S., Franklin App. No. 05AP-204,2005-Ohio-4282, at ¶ 16-17; In re S.P., Butler App. No. CA2004-10-255, 2005-Ohio-1079, at ¶ 5. Therefore, the trial court could award FCCS permanent custody without a finding that FCCS made reasonable efforts to reunify the children with their mother. Mother's third assignment of error is overruled.
 {¶ 18} Mother's first assignment of error and all of father's three assignments of error address the evidentiary support for the trial court's award of permanent custody to FCCS. We will discuss them collectively.
 {¶ 19} A decision to award permanent custody requires the trial court to take a two-step approach. First, a trial court must find whether any of the following apply:
(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
R.C. 2151.414(B)(1).
 {¶ 20} Once the trial court finds that one of the circumstances in R.C. 2151.414(B)(1)(a) through (d) apply, the trial court then must determine whether a grant of permanent custody is in the best interest of the child. R.C.2151.414(B)(1). FCCS must prove by clear and convincing evidence that an award of permanent custody is in the child's best interest. Id. In determining the best interest of a child, a trial court is required to consider all relevant factors including, but not limited to, the following:
(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
R.C. 2151.414(D).
 {¶ 21} A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence. In re Andy-Jones, Franklin App. No. 03AP-1167, 2004-Ohio-3312, at ¶ 28. "Judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Young v.Univ. of Akron, Franklin App. No. 04AP-318, 2004-Ohio-6720, at ¶ 25, citing C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, paragraph one of the syllabus. "Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact `clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" Caldwellv. The Ohio State University, Franklin App. No. 01AP-997, 2002-Ohio-2393, at ¶ 59, quoting State v. Thompkins (1997),78 Ohio St.3d 380, 387. Reversing a judgment on manifest weight grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the [judgment]."Thompkins, supra, at 387.
 {¶ 22} In connection with the first step of this analysis, the parties do not dispute that the children were in the temporary custody of FCCS for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999. R.C.2151.414(B)(1)(d). FCCS removed C.S. and J.S. from the parents' home on February 8, 2000 and May 2, 2000, respectively. FCCS filed its motions for permanent custody on August 2, 2001. At that time, both J.S. and C.S. had been in the temporary custody of FCCS for more than 12 months of a continuous 22-month period. Therefore, the trial court properly found that the requirement of R.C. 2151.414(B)(1)(d) was satisfied.[3]
 {¶ 23} Instead, the parties' arguments focus on the second step of the analysis. They contend that the trial court's decision that an award of permanent custody was in the children's best interest was against the manifest weight of the evidence. As noted, we will review the evidence to determine whether competent, credible evidence supports the trial court's best interest finding. In re G.B., Franklin App. No. 04AP-1024,2005-Ohio-3141, at ¶ 19.
 {¶ 24} R.C. 2151.414(D)(1) addresses the interaction of the child with his parents, relatives, and foster parents. J.S. and C.S. have been with the same foster mother since they were removed from their parents' custody. Significant testimony described the feelings the two children exhibited for each other. David Aiken, a psychiatric case worker who treated J.S. for more than two years, testified to the bonded relationship the two siblings have for each other. Angela Nickell and Jenna Kitchen, the family's former FCCS case workers, both described the close bonding between the children and their foster mother. The guardian ad litem's report reiterated these same findings. J.S. is protective of C.S. Both are also very bonded with their foster mother. C.S. refers to their foster mother as "mom." Alternatively, Dr. Aiken concluded that J.S. does not feel bonded with his biological parents or grandparents. Ms. Kitchen testified that J.S. does not even acknowledge mother and father as parents. Ms. Nickell described the parents' visits as detached and noted little interaction with C.S. The visits, at least for the mother, were focused more on Co.S. than C.S. Ms. Nickell saw very little bonding between mother and C.S. This factor weighs in favor of the trial court's determination.
 {¶ 25} R.C. 2151.414(D)(2) addresses the custodial wishes of the child. The guardian ad litem wrote in her report that the children wanted to be adopted by their foster mother. The guardian ad litem also recommended this placement. This factor weighs in favor of the trial court's determination.
 {¶ 26} R.C. 2151.414(D)(3) concerns the custodial history of the child. J.S. lived with his parents for the first six years of his life. FCCS had no involvement with this family until the birth of C.S. in 2000. C.S. was taken from her parents after her birth and J.S. was taken shortly thereafter. Neither child has lived with their parents for any substantial amount of time since then and both have been in FCCS' temporary custody for 12 or more months of a consecutive 22-month period. This factor weighs in favor of the trial court's determination.
 {¶ 27} R.C. 2151.414(D)(4) takes into account the child's need for a legally secure placement and whether that placement could be achieved without a grant of permanent custody to FCCS. Without doubt, every child needs a legally secure placement. The question is whether or not the parents can provide such a placement.
 {¶ 28} The parents in this case completed a significant number of the requirements in the FCCS case plan. Mother attended and completed domestic violence counseling and parenting classes. She completed a psychological and drug and alcohol assessment. Similarly, father attended and completed domestic violence counseling and anger management classes and also took a psychological and a substance abuse assessment. However, father was detained on domestic violence charges against mother two times after the trial court adopted FCCS' case plan. He was also detained once in 2002 for punching a hole in a courthouse wall. Additionally, Ms. Nickell did not see parents using skills they learned in parenting classes during their visits with the children.
 {¶ 29} More significantly, mother and father did not complete the majority of their required random drug screens. Mother had a history of abusing Talwin, a prescription drug which she used without a prescription. She did not stop the abuse of that drug until after C.S. was born. Mother also tested positive for cocaine when C.S. was born. Father tested positive for Benzodiazeprine and Opiates in 2002. Therefore, substance abuse was a significant aspect of the parents' case plan. However, mother failed to complete 69 of 70 drug screens in a two-year period. In the same time span, father only completed eight of 67 drug screens. In fact, the parents last case worker, Corey Garris, testified that in the six months before the hearing in this matter ended, the parents did not complete any drug screens. It is clear from the testimony of the parents' case workers that the parents failed to complete a significant number of the drug screens that they were asked to complete.
 {¶ 30} Additionally, Dr. Aiken testified about J.S.'s behavior problems, including diagnosis of: attention deficit disorder; oppositional defiant disorder; characteristics of autistic behavior; and post-traumatic stress disorder. Dr. Aiken testified that when he first treated J.S., he would revert to behaviors of a two or three-year old. He recommended that FCCS terminate family visits with J.S. because his regressive behavior would increase after visits. He testified that J.S.'s behavior has improved with the termination of such visits. Dr. Aiken believes that reunification with the family would be emotionally devastating to J.S. and would lead to regression in his behavior. As such, he recommended that FCCS be awarded permanent custody of J.S.
 {¶ 31} The parents in this case failed to address substance abuse, domestic violence, and anger issues that were requirements in their case plan. These were all major concerns that FCCS had about their ability to provide a secure placement for the children. This factor weighs in favor of the trial court's determination.
 {¶ 32} Finally, R.C. 2151.414(D)(5) takes into account whether any of the factors in R.C. 2151.414(E)(7) through (11) apply. Those factors address whether the parent has certain criminal convictions and the parents' ability to care for the children. The magistrate noted that for the year after Co.S. was born, the mother discontinued contact with FCCS and chose to abandon her other children. She did not contact FCCS to inquire about her children for a substantial period of time. The magistrate also noted the father and grandparents' participation in mother's year-long absence from her children. Testimony indicated that grandfather and father lied to FCCS about whether they knew where mother was during the year she stayed away from FCCS. Therefore, the magistrate found that R.C. 2151.414(E)(10) must be considered in its best interest analysis. The trial court's consideration of this factor was not error and weighs in favor of the trial court's determination.
 {¶ 33} The record reflects competent, credible evidence for the trial court to have found that an award of permanent custody was in the best interest of the children. Accordingly, its award of permanent custody to FCCS of J.S. and C.S. is not against the manifest weight of the evidence. Mother's first assignment of error and father's three assignments of error are overruled.
 {¶ 34} Finally, grandmother's third assignment of error contends that the trial court's decision denying her motion for legal custody is against the manifest weight of the evidence. However, a trial court is not required to consider placing a child with a relative prior to granting permanent custody to an agency. In re Zorns, Franklin App. No. 02AP-1297, 2003-Ohio-5664, at ¶ 28. Relatives seeking custody of a child are not afforded the same presumptive legal rights that a parent receives. Id. A trial court does not even need to find by clear and convincing evidence that a grandparent is not a suitable placement option. In re A.D., Cuyahoga App. No. 85648,2005-Ohio-5441, at ¶ 12. Instead, it is within the trial court's discretion to determine whether to place children with a relative, such as grandmother. In re Patterson (1999),134 Ohio App.3d 119, 129-130; In re Poke, Lawrence App. No. 05CA15,2005-Ohio-5226. We will reverse such a decision only upon an abuse of that discretion. In re Robinson (Apr. 3, 2002), Summit App. No. 20826. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 35} Ms. Nickell, the original case worker for the family, testified that the grandparents were not an appropriate placement for the children. The evidence in this case indicates that grandparents acted inappropriately during visits with the children by arguing with the parents. Their conduct contributed to the termination of visitation during this proceeding. The grandparents refused to allow FCCS case workers into their house for a home study to determine whether their house was appropriate for children. Grandparents testified that they lied to FCCS workers while mother absented herself for a year with Co.S. There was also concern about grandfather's alcohol consumption and failure to successfully complete alcohol counseling. Finally, if granted custody, grandparents would allow the parents back into their house. Given this evidence, the trial court did not abuse its discretion by denying grandmother's motion for legal custody. Grandmother's third assignment of error is overruled.
 {¶ 36} In conclusion, grandmother's second assignment of error is overruled as moot and the remaining assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
Petree and McGrath, JJ., concur.
[1] FCCS also filed a complaint alleging that Co.S. was either a neglected or dependent child. The hearing in this case that resolved the permanent custody determinations for J.S. and C.S. also resolved the status of Co.S. The trial court's resolution of matters concerning Co.S., however, are not the subject of this appeal. We do note, however, that the trial court sustained the state's objections to the magistrate's dismissal of the dependency complaint for Co.S and found Co.S. to be a dependent child.
[2] Those motions were both re-filed on September 24, 2002.
[3] Given this finding, the trial court did not need to address whether the children cannot or should not be placed with either parent within a reasonable time. R.C. 2151.414(B)(1)(a); In reC.C., supra, at ¶ 52.