OPINION
{¶ 1} Appellant, the mother of V.M., appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, which granted permanent custody of her daughter, V.M., to Franklin County Children Services ("FCCS"). For the following reasons, we affirm.
 {¶ 2} V.M. was born on May 13, 1998. On July 27, 1998, FCCS filed neglect and dependency complaints on V.M.'s behalf following appellant's arrest for robbery. On October 1, 1998, the complaints were amended to identify V.M.'s father and include the information that V.M. was born with marijuana and barbiturates in her system. On November 9, 1998, the Franklin County Juvenile Court adjudicated V.M. a dependent minor and awarded FCCS temporary custody. The court also adopted FCCS's case plan, which listed the goals appellant was expected to achieve to be reunified with V.M. The plan required appellant to complete parenting and anger management classes, maintain independent housing, refrain from drug use and meet her daughter's needs.
 {¶ 3} On May 27, 1999, FCCS filed a motion requesting permanent custody of V.M. pursuant to R.C. 2151.413. After a hearing, a magistrate recommended that the trial court grant the motion. On August 10, 2000, the trial court overruled objections to the magistrate's recommendation and awarded FCCS permanent custody of V.M. However, on March 20, 2001, we reversed the trial court's decision and remanded the matter for a new hearing upon determining that appellant had received ineffective assistance of counsel. In re McLemore (Mar. 20, 2001), Franklin App. No. 00AP-974.
 {¶ 4} On May 23, 2001, FCCS filed a new motion for permanent custody pursuant to R.C. 2151.413. The matter was heard before a magistrate, who also recommended granting permanent custody. Appellant filed numerous objections to the magistrate's decision. On June 19, 2003, the trial court overruled appellant's objections and adopted the magistrate's recommendation awarding permanent custody to FCCS. On appeal, we found that the trial court committed plain error by relying on inadmissible hearsay evidence in reaching its decision. Thus, on February 12, 2004, we reversed the trial court's decision and remanded the matter for a new hearing. In re McLemore, Franklin App. No. 03AP-714,2004-Ohio-680.
 {¶ 5} On remand, the case was assigned to a visiting judge of the Franklin County Juvenile Court. The hearing occurred over the course of four days, beginning November 30, 2005 and concluding on December 7, 2005. The trial court heard testimony from Kelly Russell (V.M.'s case worker), Patricia Stephens (an FCCS caseworker who assisted with V.M.'s case), Richard Parry (V.M.'s guardian ad litem), appellant, and appellant's mother (V.M.'s grandmother).[1] On December 21, 2005, the trial court issued a judgment entry granting FCCS's motion for permanent custody.
 {¶ 6} Apparently, appellant did not receive service of the December 21, 2005 judgment entry. Accordingly, the trial court granted a motion for relief from judgment, and reissued the order as of February 7, 2006. Appellant now raises the following assignments of error:
First Assignment of Error
Ohio Revised Code § 2151.414(B)(1)(d) is unconstitutional under the due process clauses of the state and federal Constitutions as it creates an irrebuttable presumption of parental unfitness.
Second Assignment of Error
The trial court erred in granting the motion for permanent custody as FCCS failed to make reasonable efforts to implement the case plan.
Third Assignment of Error
The trial court erred in finding that an award of permanent custody was in the best interests of the child, pursuant to R.C. § 2151.414(D).
 {¶ 7} Appellant's first assignment of error challenges the constitutionality of R.C. 2151.414(B)(1)(d). Appellant asserts that R.C. 2151.414(B)(1)(d) creates an irrebuttable presumption that the parent is unfit. Parents have a constitutionally protected interest in the care, custody and control of their children. Troxel v. Granville (2000), 530 U.S. 57,120 S.Ct. 2054. However, parental rights are not absolute, but are subject to the ultimate welfare of the child. In re S.W., Franklin App. No. 05AP-1368, 2006-Ohio-2958, at ¶ 7, citing In re Cunningham
(1979), 59 Ohio St.2d 100, 106. The state may terminate a parent's rights in order to protect the best interests of the child. In re Wise (1994), 96 Ohio App.3d 619, 624.
 {¶ 8} Ohio's laws governing child custody and protection were created, and are to be construed, to respect the parent's fundamental right and to protect the ultimate welfare of the child. In re Wise, supra, at 624. As this court has previously recognized, these "statutes appropriately reflect the need to balance the extraordinarily significant rights and interests: [the] parents' * * * interest in the custody, care, nurturing, and rearing of their own children, and the state's parenspatriae interest in providing for the security and welfare of children under its jurisdiction." In re Thompson (Apr. 26, 2001), Franklin App. No. 00AP-1358; In re Thompson, Franklin App. No. 02AP-557, 2003-Ohio-580, at ¶ 23, discretionary appeal not allowed, 98 Ohio St.3d 1515, 2003-Ohio-1572. We have found that the balance thus struck is not unconstitutional. Id.
 {¶ 9} We have previously weighed appellant's assertion that R.C. 2151.414(B)(1)(d) is unconstitutional in that it creates an irrebuttable presumption of parental unfitness. On each occasion, our review found the argument advanced by appellant to lack merit. In re S.W., supra, at ¶ 11; In re J.S., Franklin App. No. 05AP-615, 2006-Ohio-702, at ¶ 11; In re C.C., Franklin App. No. 04AP-883, 2005-Ohio-5163, at ¶ 11-12; In re Abram, Franklin App. No. 04AP-220, 2004-Ohio-5435, at ¶ 12-13; In re Brooks,
Franklin App. No. 04AP-164, 2004-Ohio-3887. We see no reason to diverge from this precedent. We find that R.C. 2151.414(B)(1)(d) is not unconstitutional. Appellant's first assignment of error is overruled.
 {¶ 10} In her second assignment of error, appellant argues that the trial court erred in terminating her parental rights where FCCS failed to make reasonable efforts to implement the assigned case plan. As was the case with her first assignment of error, this court has previously found the basis for appellant's contention to be without merit. We do so again.
 {¶ 11} Pursuant to R.C. 2151.419, a court must determine whether the children's services agency involved has made reasonable efforts to prevent the removal of the child from the child's home "at any hearing held pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314 [2151.31.4] 2151.33, or 2151.353 [2151.35.3] of the Revised Code." R.C.2151.419(A)(1). Absent from that listing is R.C. 2151.413 or2151.414, the sections under which FCCS filed its complaint and the trial court adjudicated the issues. Given that disparity, Ohio courts have held that the "reasonable efforts" requirement in R.C. 2151.419 is not applicable to permanent custody cases involving R.C. 2151.413 and 2151.414. In re S.M., Franklin App. No. 05AP-1262, 2006-Ohio-2529, at ¶ 12; In re J.S., supra, at ¶ 17; In re S.S., Franklin App. No. 05AP-204, 2005-Ohio-4282, at ¶ 17; In re S.P., Butler App. No. CA2004-10-255,2005-Ohio-1079, at ¶ 5. Accordingly, we overrule appellant's second assignment of error.
 {¶ 12} Appellant's third assignment of error challenges whether there is evidentiary support for the trial court's conclusion that permanent custody is in V.M.'s best interests as required by R.C. 2151.414(D). The decision of a trial court will not be disturbed on appellate review unless it is against the manifest weight of the evidence. In reviewing a judgment, an appellate court presumes that the findings of the trial court are correct. In re Brofford (1992), 83 Ohio App.3d 869, 876. Judgments supported by some competent, credible evidence going to all essential elements will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, paragraph one of the syllabus.
 {¶ 13} In order to obtain an award of permanent custody, FCCS must demonstrate by clear and convincing evidence that (1) one of the four factors enumerated in R.C. 2151.414(B)(1) applies, and (2) permanent custody is in the best interest of the child. R.C.2151.414(B)(1); In re O.J., Franklin App. No. 05AP-810, 2006-Ohio-286, at ¶ 10. Similarly, the trial court must find that both requirements have been met before an award of permanent custody may be ordered. Id. Appellant's third assignment of error does not challenge the trial court's finding that V.M. was in the custody of FCCS for a period of 12 months or more out of a consecutive period of 22 months ending on or after March 18, 1999. Accordingly, our review is limited to the trial court's determination that granting permanent custody of V.M to FCCS was in V.M.'s best interest.
 {¶ 14} In assessing the best interests of the child, a trial court is guided by R.C. 2151.414(D). That statute provides, in pertinent part:
In determining the best interest of a child * * * the court shall consider all relevant factors, including, but not limited to, the following:
(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child, as expressed directly by the child or though the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
The trial court addressed each of these factors in its entry.
 {¶ 15} As to the first factor, the trial court determined that V.M. had only interacted with appellant 17 times over the 44-month period, for a total of 17 hours. The trial court further noted that V.M. did not become familiar with appellant until after January 2002, when appellant began making regular visits. Moreover, the court noted that V.M. had bonded with her foster family and was very close to them.
 {¶ 16} The evidence presented at trial supports the trial court's observations. Kelly Russell, V.M.'s caseworker, testified that there was little bonding between V.M. and appellant. Appellant was incarcerated for two 90-day periods, during which time she could not see V.M. Appellant also admitted that she missed visits because she used poor judgment, overslept or mixed up the dates of the scheduled visits. The guardian ad litem reported there was some bonding between appellant and V.M., but admitted observing only one 30-minute visitation during the relevant time period. In contrast, V.M. has lived with her foster family for all but three months of her life and refers to them as "mom" and "dad."
 {¶ 17} Under R.C. 2151.414(D)(2), the court concluded that, as of March 20, 2002, V.M. was not mature enough to express her own wishes regarding custody. At that time, V.M. was only three years old, and we find the trial court's conclusion is appropriate. While the guardian ad litem recommended against permanent custody, V.M.'s appointed counsel advocated throughout the proceedings that permanent custody should be awarded to FCCS. The failure of the trial court to expressly note the report and position of the guardian ad litem does not render the decision against the manifest weight of the evidence. It is the task of the trial court to judge the credibility of witnesses and their testimony. The trial court did so in this instance.
 {¶ 18} The trial court next addressed V.M.'s custodial history under R.C. 2151.414(D)(3). The court noted that V.M. was in appellant's custody for less than three months following her birth on May 13 until July 27, 1998. Since July 27, 1998 forward, V.M. was in the custody of FCCS and living with her foster family. This factor weighs in favor of the trial court's decision to award permanent custody to FCCS.
 {¶ 19} Under R.C. 2151.414(D)(4), the trial court evaluated V.M.'s need for a legally secure placement and found that V.M.'s need for secure placement could not be achieved without granting FCCS permanent custody. Although there was evidence that appellant's ability to provide a stable environment was improving, there also was evidence that appellant continued to exhibit difficulties with anger management and had not completely overcome her problems with drugs and alcohol. On the other hand, there was no dispute that V.M. enjoyed a loving and stable environment with her foster family.
 {¶ 20} Under the final factor set out in R.C. 2151.414(D), the court was required to consider whether any of the factors listed in R.C. 2151.414(E)(7) through (E)(11) applied to the relationship between V.M. and appellant. The court found that V.M. was abandoned for two 90-day periods. R.C. 2151.414(E)(10). There is evidence in the record that supports the court's finding. In fact, appellant admits that she did not visit V.M. at all from January to June 1999.
 {¶ 21} The trial court's conclusions weigh in favor of granting permanent custody of V.M. to FCCS. Each of the findings is supported by competent and credible evidence. Accordingly, we find that trial court's award of permanent custody to FCCS is not against the manifest weight of the evidence. Appellant's third assignment of error is overruled.
 {¶ 22} Having overruled all of appellant's assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
Bryant and Whiteside, JJ., concur.
Whiteside, J., retired of the Tenth District Court of Appeals, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
[1] The trial court adopted the view of appellant, FCCS and V.M.'s guardian ad litem and limited the time frame for adjudication of the permanent custody motion from the child's date of birth to March 20, 2002, the last day of the second trial. Therefore, all evidence considered originates from that period.