OPINION
{¶ 1} Lisa R. appeals from the judgment of the Clark County Juvenile Court granting permanent custody of her children, K.R. and M.R., to the Clark County Department of Job and Family Services, hereinafter "the Agency."
 {¶ 2} On May 16, 2003, the Agency sought a Protective Supervision Order for Lisa's children which was granted by the court on June 2, 2003, for a one-year period. The Agency asserted that Lisa's children were at risk because Lisa was engaged to a man who the Agency felt was at high risk for abusing the children.
 {¶ 3} K.R. was six years old at the time of the order and M.R. was three years old. A case plan was set in place by the court to address Lisa's alleged problems with parenting skills. Lisa was assigned Henrietta Curry of the Agency as her case worker. Lisa was required under the plan to maintain adequate housing and to insure the children had routine and ongoing medical and dental care once the children were returned to her. Lisa was to visit with the children twice a week at Gibault Visitation Room. The problems that initially caused the children to be placed outside the home (the reasons the Agency was granted temporary custody) are not placed on the record. The family's progress was to be measured by evidence that the children's special needs were being met and that their level of physical, social and developmental delays had improved and by Lisa's regular visiting and providing a nurturing environment for the children. On June 14, 2004, the children were placed in the temporary shelter care of the Agency and removed from Lisa'a home and placed in the foster care of Paul and Evelyn W. On September 16, 2004, the court found both children dependent pursuant to R.C. 2151.04 and committed them to the temporary custody of the Agency. On May 11, 2005, the Agency sought permanent custody of the children which the court granted on February 8, 2006.
 {¶ 4} In granting permanent custody to the Agency the trial court made the following findings among others:
 {¶ 5} "Lisa R., the mother of K.R. and M.R., has presented herself to the Court as a loving, sincere young mother. Unfortunately, she also convinced the Court that she is mentally and physically and emotionally and psychologically incapable of meeting the needs of her children now or at any time in the near future. In spite of her best wishes and valiant efforts, Ms. R. is incapable of meeting the medical needs of the children, the educational needs of the children, the psychological needs, the disciplinary needs of the children and, most importantly, the consistent loving, nurturing needs of the children. Mother is mildly mentally retarded and presents as such. Her demeanor was puzzling, her vocabulary questionable and her presentation headshaking. She seems to love her children, but cannot care for herself or the children. Her halting, confused discourse demonstrated to the Court repeatedly that she doesn't make sense of what the world presents to her. She is physically debilitated by her seizures to a degree that she is prohibited from working. She presents that her own doctor tells her she is not able to be around equipment or machinery and is unable to even work at McDonalds. She subsists on social security income due to her glaring deficiencies.
 {¶ 6} "The Department did establish a case plan for mother when the children were removed. The case plan was reasonable. Mother has minimally or mechanically completed a few portions of it. She has visited in a supervised setting on a fairly regular basis. She has maintained stable housing, though it is a subsidized one bedroom apartment. She has kept her living environment reasonably safe and appropriate with the assistance and supervision of others. Yet, mother has failed to benefit from services offered to her. She failed to attend the educational and medical
 {¶ 7} appointments of the children. She has failed to follow through with offered assistance to take part in the children's therapy and dental care. She has failed to implement the lessons learned from her exposure to parenting programs by continuing to inappropriately discipline the children. Sadly, mother is earnest in her love for her children, but is simply incapable of meeting their needs.
 {¶ 8} "The Complainant, CCDJFS, prepared a case plan with and for the parents to assist them in their efforts at reunification with the child. The Court approved the case plan. The case plan objectives are reasonable and have not been met by either parent.
 {¶ 9} "The parents have failed to substantially complete the case plan, have been unable to meet the needs of the child and have provided almost no support for the child since removal.
 {¶ 10} "The child has blossomed in foster care. The child has grown and matured significantly since leaving the home of the parents.
 {¶ 11} "The Department of Job and Family Services has made reasonable efforts to reunite the child and parents. It established a case plan that sought the best interest of the child. It attempted to maintain regular communication, established visitation, attempted home visits and facilitated completion of the case plan, all of which have proven unsuccessful due to the unwillingness and inability of the parents to care for their child. The Department met all reasonable needs of the child. No services were requested by the parents or the child that were not met. The caseworker repeatedly reviewed with the parents available services, the case plan requirements and, most importantly, the needs of the child. The efforts of CCDJFS were proper and sufficient to achieve the goal of reunification of parent and child.
 {¶ 12} "The child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent. The parents have offered no evidence to indicate that they are ready, willing or able to provide for the needs of the child. It would be inappropriate and unsafe to place a child in the home of either parent.
 {¶ 13} "The child should not be returned to the parents for the following reasons:
 {¶ 14} "1. Following removal of the child outside the home of the parent, and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents, they have failed to remedy the problems that cause the child to be placed outside the home. Both parents have failed continuously and repeatedly to substantially remedy the conditions that caused the child to be placed outside the home. The parents have not completed the necessary parent education programming and have not maintained suitable employment with verification to the Department of Job and Family Services. Neither completed the recommended counseling. Neither has maintained safe and appropriate housing for the parent and the child. The parents have further failed to maintain regular visitation with the child and have lost the significant opportunity to bond with the child. All services requested by the parents were offered to them, but they have failed to assimilate the advice and direction offered by those in a position to help.
 {¶ 15} "2. The parents have demonstrated a lack of commitment toward the child by failing to regularly support the child. Neither parent has adequate income to provide for the needs of the child. Neither parent has indicated a willingness to provide an adequate permanent home, proper transportation, or the basic necessities of life. The parents do not have the drive or ability to raise this child.
 {¶ 16} "It is in the best interest of the child to grant permanent custody of the child to the Department of Job and Family Services for the following reasons:
 {¶ 17} "a. There is a reasonable probability that this healthy, capable child can be adopted. The child has lived in legal limbo for many months. The child would benefit greatly from a permanent, secure home.
 {¶ 18} "b. The child has not lived exclusively with either parent for an extended period of time. The child has only visited briefly and infrequently with the parents since removal.
 {¶ 19} "c. There is no probability that the parents will be able to provide a safe, secure and appropriate home for the child any time soon. Neither parent has a suitable home for the child.
 {¶ 20} "d. The Guardian ad Litem for the child recommended that the motion for permanent custody be granted.
 {¶ 21} "e. The child is mentally, physically and emotionally capable of proper development and growth if placed with an adequate, caring adult. The child can best do this in a legally secure, permanent home. The parents are not able to provide such a home.
 {¶ 22} "f. Neither parent has substantially remedied the conditions that caused removal of this child.
 {¶ 23} "g. There are no known or interested relatives on either side of the family that can care for the child.
 {¶ 24} "h. The wishes of the child as expressed directly by the Guardian ad Litem indicate a strong desire to be placed in a loving, secure, permanent home that neither parent can provide.
 {¶ 25} "I. There is no safe, appropriate, harmonious and loving relationship between the child and the child's parents or extended family. The child will benefit from continued removal from the birth families. There is no indication of a significant risk or harm to the child by not returning the child to the parent. In fact, the evidence is clear that the child will benefit significantly if the child is not returned to either parent.
 {¶ 26} "j. The child has blossomed and grown and developed well in the home of the foster parents."
 {¶ 27} Only M.R.'s father showed up for the permanent custody hearing. He testified that he loved his daughter but because he lives in Columbus, he is unable to visit her on a regular basis. He testified he wanted to have custody of M.R. but he did not know how to go about getting custody of her despite the fact he was represented by counsel. (T. 75). He testified he supported M.R. whenever he could find work. (T. 77, 78). He said he was in arrearage on his support obligation and had his driver's license suspended. He testified he has four other children. K.R.'s father did not appear at the permanent custody hearing and testify and there was testimony from Lisa that he neither provided financial nor emotional support for her or K.R.
 {¶ 28} The guardian ad litem, Alan Collins, filed a report with the court and recommended that the Agency be given permanent custody of K.R. and M.R. He stated the reasons for his recommendation were that Lisa had failed to complete her case plan, had been uncooperative with social workers and parent aides, and she lacked the intellectual ability to provide a safe, stable environment for her children. The guardian noted the children have special needs the mother could not manage, and she has failed to follow the recommendations of Dr. Gibeau.
 {¶ 29} Crystal Rosenberg, a licensed social worker at the Rocking Horse Center, testified that she began counseling K.R. in February 2005. She noted that K.R. was having a great deal of difficulty adjusting to going back and forth from his foster home and to visitation with his mother. Rosenberg said he was "acting out" by stealing things and bed wetting. She testified K.R. loves his mother very much and feels very loyal to her. She said K.R. told her his mother encouraged him to be bad so he can be returned to her. K.R. told her he needs to take care of his mother because she told him so. Ms. Rosenberg said this "reverse role" causes K.R. distress and worry. Ms. Rosenberg testified that K.R. needs closure so he can move on with his life. (T. 18.) She testified the foster parents provided a nurturing environment for K.R. She testified the mother's reported sporadic visitation with the children demonstrates the mother's lack of commitment to K.R. (T. 21.) Lastly, she testified she believed K.R. was resilient enough to withstand a permanent change of custody to adoptive parents.
 {¶ 30} Julie Vansteenburg, foster care coordinator at Osterlen Wrap-Round, testified she acted as a parent aide for Lisa R. She said she witnessed numerous visits of the children with Lisa in Lisa's home. Ms. Vansteenburg said she provided advice to Lisa on a number of parenting matters and she took some advice and not others. (T. 160.) She testified she was in Lisa's home twice a week from February to May 2005, for about two hours at a time. She said Lisa was never rude to her when she provided advice to her. (T. 161.) She said Lisa's home was clean for the most part. (T. 163.) She said she never saw Lisa inappropriately discipline the children. She said she used "time outs" for the children appropriately. (T. 158.) She said the only visits cancelled by Lisa were for medical reasons. Lastly, she said Lisa hugged and kissed her children when the visits ended. (T. 162.) Ms. Vansteenburg said she stopped visiting with Lisa and the children in May 2005 because she didn't think she was doing Lisa any good. She said she was supervising the visitation rather than working on the goals which is why Lisa had a parent aide in the first place. (T. 169.) She admitted she never discussed her frustration with Lisa herself. (T. 171.) She testified that in hindsight she might have tried harder to achieve the goals the Agency wanted her to achieve with Lisa. (T. 172.)
 {¶ 31} Cari Burchwell testified she supervised Lisa's visitation with her children at the Gibault Visitation Center from July 2004 to January 2005. She indicated she had one year of college and had started working at the Center in May 2004. She said Lisa missed 44 out of 108 visits but only 5 of them were without excuse, e.g., transportation problems, weather, illness of her or the children. (T. 89.) She testified that she observed Lisa yell at the children at times and enforce lengthy and inappropriate "time outs" for discipline purposes. She also said Lisa did not hug the children but was very business-like with them during the visits. She said Lisa insisted the children look nice and behave. (T. 96.)
 {¶ 32} Dr. Phil Gibeau, a licensed clinical psychologist testified he performed a parental evaluation of Lisa and filed a report on September 28, 2004. (Ex. A.) He said the evaluation was performed to assist the Agency in determining the best course of action in creating a positive environment for Lisa to raise her two children. He administered a battery of tests and determined Lisa had a verbal IQ of 63 — "mentally retarded." On the Parental Stress Test, the results suggested Lisa was having difficulty dealing with everyday life. He said Lisa admitted to having difficulty with the children, getting through to them, "didn't feel in control as a parent, was having difficulty in accepting her children's age-appropriate signs of independence." (T. 68.) He concluded Lisa was not currently ready to be an effective parent. He said she needs to be able to listen better to some of the agencies so that the input they are giving her can be followed through in her life. (T. 69, 70.)
 {¶ 33} Dawn Mast, an employee of Children's Services and a licensed social worker, worked with the R's since December 2004. She initially worked with Lisa to address medical needs and cleanliness of the home. In her opinion, Lisa wasn't using her parenting skills that she learned to appropriately discipline her children or parent them. (T. 92.) She only saw Lisa with her children once, when they were doing their own thing. (T. 91.) She testified Lisa attended parenting classes and exercised her visitation privileges regularly. She said the children were adoptable, and the children should stay together.
 {¶ 34} Shelly Robbins, a registered nurse for the Rocking Horse Center, testified she first encountered Lisa and her children in October 2003. She said she became concerned that K.R.'s dental needs were not being met because several dental appointments for the child had not been kept by the mother. K.R. had nine cavities and his teeth were rotting at the gum line. Ms. Robbins said she contacted Lisa's Agency case worker, Henrietta Curry, and arranged transportation to the dental office in Dayton. Robbins said Lisa missed appointments because of transportation problems and because she just forgot them. (T. 124.) Robbins said she also became concerned about M.R. because her speech was unintelligible. She said she learned that Lisa had cancelled 29 out of 57 weekly appointments with a speech pathologist. She said once M.R. was in foster care, attendance at the pathologist's office improved dramatically. Ms. Robbins said M.R.'s speech is now clear. (T. 130.) She also testified that most of the time she visited Lisa's home it was not clean. She said she also observed medication being left out (albeit with the child-proof caps on). Ms. Robbins said M.R.'s interaction with others improved after she entered foster care and improved her speech. (T. 133.) She testified K.R. was doing well in school but appears very anxious about his future. (T. 136.)
 {¶ 35} On cross-examination, Ms. Robbins admitted that some of the missed speech pathologist appointments were cancellations by the pathologist. (T. 143.) Ms. Robbins conceded that Lisa loves her children and her children love her. However, she opined that Lisa is incapable of raising the children with the needs they have and being there to nurture and guide them. (T.150.) Lastly, she stated that in her opinion there is nothing that can be done to help these children be reunified with their mother. (T. 150.)
 {¶ 36} Stephanie Bowshier, a housing inspector for the Springfield Housing Authority, testified that Lisa R. always paid her rent on time and she always found her apartment clean and appropriate and she never received complaints from neighbors about Lisa. (T. 38, 39.)
 {¶ 37} Debbie Flowers testified she has known Lisa for ten to fifteen years and her home was always clean and she had no concern for Lisa's parenting skills. She said she let Lisa babysit her own children when they were babies. She said Lisa is a loving parent and she never saw her "violent." (T. 21.)
 {¶ 38} Penny Whitacre testified she has known Lisa R. for two years. She testified she was on a drill team with Lisa and they both took their children to watch them practice. She testified she never witnessed inappropriate parental conduct on Lisa's behalf and her children seemed well-behaved. (T. 30.) She testified she believed Lisa is a good mother to her children and they seemed happy to be with her. (T. 31.)
 {¶ 39} Vickie Houseman testified that she is a community health worker with Help Me Grow, a division of the Clark County Health Department. She said she worked with Lisa from August 2003 until December 2003 assisting her with M.R. She stated she
 {¶ 40} met with Lisa monthly at Lisa's home. She testified she was concerned about M.R.'s speech development. She said Lisa attended parenting classes at the Parent Information Center and a monthly support group called Keeping It Together. (T. 51.) She testified that Lisa had "somewhat of a learning disability" and she worked with Lisa closely on meal instructions. She said the children were always up to date on immunizations and regular doctor appointments. She testified that with some help, Lisa did well. (T. 58.) She testified she never saw Lisa strike her children although she does have anger problems. (T. 59.)
 {¶ 41} Lisa R. testified she did her best to comply with the Agency's case plan. She testified she visits with her children and believes the visits go well. She admitted she has had to discipline K.R. for hitting M.R. but denied she used excessive discipline, such as long time outs. (T. 5,6). She testified she stopped working at McDonald's because she has had seizures and asthma. She testified she receives social security for her disability, public assistance for rent, and food stamps. She testified that she graduated from high school but attends classes to learn to read. She testified she is twenty-six (26) years old and believes she can provide an adequate home for her children. She testified she loves her children and she said she hugs and kisses them. She testified she could not attend M.R.'s speech pathologist's appointments while she was in foster care because they conflicted with her own doctor's appointments. (T. 19). She testified she never married either of the children's fathers. She admitted Dr. Gibeau told her she could benefit from "mental health" medicine but she did not take any more medicine because of the medicines she takes for her seizures, headaches, and asthma. She denied telling K.R. to misbehave at the foster home so that he could be returned to her. (T. 43)
 {¶ 42} Evelyn W. testified the children were in her foster care for a year and a half at the time of the hearing. She said she could not understand M.R.'s speech when she first came into her home but she is doing well after speech therapy. She testified that M.R. was adapting well and even called her husband "grandpa." (T. 178). She testified K.R. was not doing as well although he recently improved his school work. She said his teeth were originally in very poor condition, but they have improved after consistent dental therapy. (T. 179). She testified K.R. is an angry little boy who occasionally steals and does "bed wetting." She testified K.R. was particularly difficult after visits with his mother. Although she told Lisa she was welcome to come along on the children's doctor's appointments, she admitted she did not feel it was her duty to inform Lisa when the appointments were scheduled. (T. 9).
 {¶ 43} In her first assignment, Lisa R. argues that the trial court erred when it found that there was clear and convincing evidence that the minor children could not be placed with her within a reasonable period of time or should not be placed with the Appellant.
 {¶ 44} Because the instant case was tried on a motion to modify temporary custody to permanent custody, R.C. 2151.353 did not apply; instead, the proceeding was governed by R.C.2151.414(B), which states in pertinent part:
 {¶ 45} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 46} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 47} "(b) The child is abandoned.
 {¶ 48} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 49} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or afer March 18, 1999.
 {¶ 50} "For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."
 {¶ 51} Once a court determines that one of the above conditions exist, it must then determine by clear and convincing evidence that permanent custody is in the best interest of the children by considering the factors listed in R.C. 2151.414(D) as well as any other relevant factors. It is important to note that when R.C. 2151.414(B)(1)(d) applies, the court is not required to make a determination that the child cannot or should not be returned to either parent within a reasonable time. "The court does not need to determine that the child cannot or should not be placed with either parent within a reasonable time [when] the child has been in the temporary custody of one or more public children services agencies for more than 12 of the last 22 months." In re. M.H., Cuyahoga App. No. 80629 at ¶ 25, 2002-Ohio-2968; See R.C. 2151.414(B), see, also, In re. WilliamS. (1996), 75 Ohio St.3d 95, 99, 661 N.E.2d 738." See also Inre Ch. O, 2005 WL 563747 (Ohio App. 8 Dist.), 2005-Ohio-1013.
 {¶ 52} Because it is undisputed the children were in the custody of the Agency for twelve or more months of a consecutive twenty-two period, the Appellant's first assignment of error is overruled.
 {¶ 53} In her second assignment, Lisa R. argues the trial court erred to her prejudice when it found that her children's best interests would be served by a permanent custody award to the Agency.
 {¶ 54} "To determine whether permanent custody is in the children's best interest, the court is required to turn to R.C.2151.414(D):
 {¶ 55} "* * * [T]he court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 56} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 57} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 58} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 59} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 60} Appellant argues that the trial court's finding that the child's best interests would be served by a permanent custody award to the Agency was against the manifest weight of the evidence. She argues that her children have a good relationship with her and she with them. She notes that the court found that she is a "loving, sincere young mother." She notes that she presented from her friends that she is a good parent. Secondly, she argues that the court failed to ask the children their wishes regarding their custody although the court interviewed them in chambers.
 {¶ 61} She argues that she met the goals of the court's case plan by maintaining appropriate housing, providing appropriate discipline for her children, and following the recommendations of Dr. Gibeau. She also notes that she completed parenting classes as required in the case plan. She argues that she cannot work because of her seizures, but has adequate income to support her children because of social security income and public assistance.
 {¶ 62} The State argues that the trial court's best interest finding is supported by the trial record. The State notes that despite the fact the court found Lisa loves her children, she is not able to appropriately give them the care and nurturing they need to thrive. The State notes the guardian ad litem recommended custody be granted the Agency, and that the trial court found the children too immature to consider their wishes regarding their custody.
 {¶ 63} In its complaint for permanent custody, the Agency asserted that it had made reasonable effort to reunite the minor children with their parents. Although there is some disparity in the case law as to the Agency's responsibility with respect to the case plan, it is clear that if the parents have failed to comply with the requirements of the case plan despite the Agency's effort to assist them, permanent custody is appropriate. We have previously held that the Agency must make a good faith effort to reunify the children with their parents. Matter ofPrice, 1993 WL 76957 (Ohio Ct.App. Greene App. 1993).
 {¶ 64} On review, this court must affirm the decision of the trial court unless its determination is not supported by clear and convincing evidence. In re Pieper Children (1993),85 Ohio App.3d 318, 326, 619 N.E.2d 1059. Clear and convincing evidence is proof that produces "in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Id., citing In re Adoption of Holcomb (1985),18 Ohio St.3d 361, 368, 481 N.E.2d 118.
 {¶ 65} As a preliminary matter, we note that an appellate court reviews a juvenile court's custody determination for an abuse of discretion. In re Brown (2001), 142 Ohio App.3d 193,198. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. The discretion afforded to a juvenile court in custody matters "should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Starks,
Darke App. No. 1646, 2005-Ohio-1912, ¶ 17, quoting Miller v.Miller (1988), 37 Ohio St.3d 71, 74. We are mindful of these considerations while considering the alleged errors.
 {¶ 66} The Fifth District Court of Appeals affirmed the trial court's finding that the children could not be placed with the mother within a reasonable time where the mother was unable to remedy the conditions which caused the children to be removed from the home in the first place, although the mother received a substantial amount of intervention, where she had difficulty with supervision of the children, budgeting, maintaining housing, dealing with depression, and addressing medical issues of the children. There were noted developmental delays with the children, and although the mother completed parent education programs she was unable to apply lessons learned due to intellectual limitations. In re Jessalyn and Swisher (July 7, 2003), Tuscarawas App. 2003-AP040028. Evidence that mother's level of mental retardation precluded her from learning necessary parenting skills, that mother suffered from seizure disorder, that mother was unable to parent child without constant supervision and help from adults, and that despite extensive services being provided mother made no progress supported trial court's finding that child could not be placed with the mother within reasonable time, as grounds for terminating mother's parental rights. In the matter of Sadie R, (June 28, 2005) Lucas App. L-04-1057.
 {¶ 67} The record supports the trial court's finding the Agency made a good-faith effort to reunite the children with their parents. Neither biological father provided financial or emotional support for the children. Neither has appealed the trial court's termination of the parental rights.
 {¶ 68} The record also supports the trial court's finding that the Agency made a good-faith effort to reunite the children with their mother. Despite the best efforts of the Agency, Lisa had considerable difficulty complying with the case plan. She became frustrated at her lack of progress in the parenting classes and it became apparent she was unable to parent her young children without close supervision. Nurse Shelly Robbins opined that Lisa is incapable of raising her children with the needs they have and she is unable to nurture them. She admitted that she had difficulty communicating with her children and "getting through" to them. Dr. Gibeau noted that Lisa's insight regarding conditions affecting her life was poor as was her judgment. (State's Ex. A). He opined that her self-centered mentality and poor emotional control needed to be modified before the children were returned to her. Dr. Gibeau noted that Lisa's affect was flat and her prevailing mood was one of pessimisim and depression. The trial court itself noted that Lisa's demeanor was troubling. The court noted that Lisa's halting, confused discourse with the court demonstrated that "she doesn't make sense of what the world presents to her." The evidence on the other hand indicates the children have flourished in foster care. Both children's medical and educational needs were addressed. There was testimony both children need permanency in their situation and both children are presently adoptable. There was also evidence to support the trial court's finding that both children were too young and immature to express a preference regarding their custody.
 {¶ 69} In summary, we cannot say the trial court abused its discretion in finding that the best interest of the children would be served by an order granting permanent custody to the Agency. The Appellant's second assignment of error is overruled.
 {¶ 70} The judgment of the trial court is affirmed.
Wolff, J., and Fain, J. concur.