**In re NICHOLAS H.**

[Cite as *In re Nicholas H.* (2000), 137 Ohio App.3d 442.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–99–1354.

Decided May 5, 2000.

---

*Spiros Cocoves,* for appellant Melanie M.

*Julie Kitzler,* for appellee.

---

HANDWORK, Judge.

This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, which granted permanent custody of Nicholas H. to the Lucas County Children Services ("LCCS"). For the reasons stated herein, this court affirms the judgment of the trial court.

Appellant, Melanie M., mother[1] of Nicholas H., sets forth the following assignment of error:

"ASSIGNMENT OF ERROR

"Whether the trial court erred in finding that Lucas County Children Services should be granted permanent custody of the child."

Nicholas was born on February 28, 1997. LCCS became involved with this family shortly after Nicholas was born as the result of a referral that he suffered from nonorganic failure to thrive. LCCS offered services while allowing the child to stay in the home. A LCCS family advocate was assigned to work with the family and did so for eight months, twice a week. However, problems with caring for Nicholas continued. Appellant failed to seek medical treatment for Nicholas on more than one occasion. In February 1998, the family advocate transported Nicholas to the hospital where he was admitted for weight loss, an ear infection, and a high fever. After this occurred, LCCS filed the complaint in dependency and neglect and was granted interim temporary custody.

A guardian *ad litem* was appointed for Nicholas. Counsel was appointed for appellant. The original goal of services was reunification with appellant.

In regard to appellant, case plan, filed on March 20, 1998, was established to address concerns of unsafe and unstable housing, poor parenting and not meeting Nicholas's needs, a history of domestic violence, and appellant's intellectual/psychological impairments. Appellant was to complete a diagnostic assessment, follow through with recommendations of the assessor, participate in Project Grow

---

1. The alleged father failed to participate in any services and is not a party to this appeal.

at St. Vincent Medical Center, and attend medical appointments for monitoring the child's weight gains.

LCCS was awarded temporary custody effective May 14, 1998, following a hearing on May 12, 1998. LCCS filed a motion for permanent custody on March 30, 1999. On June 3, 1999, the guardian *ad litem* for Nicholas filed a report recommending that permanent custody was in his best interest. Trial was held on September 15, 1999.

A psychologist at Harbor Behavioral Health Care ("Harbor") who conducted a psychological assessment of appellant testified that she initially saw appellant over a period of three days in the summer of 1998 for an evaluation of her intellectual functioning and her parenting skills. The psychologist stated that appellant had limited insight and minimized the stressors in her life. The psychologist testified that appellant indicated that she had her first child at age sixteen and that she had lost custody of that child to LCCS but was unsure why except to say that LCCS "wants white babies." The psychologist testified that appellant scored at the borderline level of functioning on the intellectual test and showed poor social and practical judgment; appellant also indicated a high level of distress and scored in the severely depressed range. The psychologist testified that although appellant was able to verbalize appropriate parenting responses on a parenting questionnaire, appellant was unable when asked to provide more detail or discuss unusual parenting situations. Appellant's responses on one parenting questionnaire indicated that she felt overwhelmed and inadequate in her parenting role. The psychologist opined that appellant suffered from a major depressive disorder. The psychologist also testified that appellant appeared to be very resistant to receiving help from others and when appellant discussed the parenting classes, appellant stated that she did not learn anything new. The psychologist was concerned that appellant appeared to have very poor insight as to why her children were removed by LCCS and did not accept any responsibility for their removal. At the conclusion of her evaluation, the psychologist had recommended that appellant begin individual therapy and be evaluated for medication for her depression and have a parent aide work closely with appellant to implement techniques from parenting classes and monitor appellant's efforts to meet the child's needs. The psychologist did not see appellant after the assessment because the psychologist left Harbor.

A psychiatrist who evaluated appellant on September 1, 1998 testified that appellant appeared to have symptoms of depression such as sleep and appetite disturbance, crying spells, suicidal thoughts, and feelings of hopelessness. The psychiatrist prescribed an antidepressant medication in September, and appellant was seen for seven follow-up appointments with either the psychiatrist or her nurse. Appellant kept the appointments through March 25, 1999, and the

medication appeared to help her. Appellant did not keep appointments with the psychiatrist after March 25, 1999.

An LCCS parent educator testified in regard to her involvement in this case from December 1998 through March 1999. She testified that the parenting program has two portions, an instructional component and a home visit/observation portion. The parent educator testified that appellant attended seven of ten class sessions of the instructional portion. The educator testified that appellant did not participate in class, did not complete any of her homework assignments, and did not bond with other class participants. The educator testified that appellant did not complete or pass the program. The educator also testified that appellant refused to visit with the educator outside of the agency. The educator testified that although a nutritionist had lectured on healthy foods, appellant brought pop and candy to visits with Nicholas. The educator opined that appellant showed increased knowledge in only one area of parenting, positive attention.

The LCCS caseworker who had worked with this family from January 1998 testified that appellant moved from an apartment that was appropriate to one that was not appropriate because it had no lights, no gas, no door locks, broken windows, and no food. Upon the caseworker's recommendation, appellant then went to the Battered Women's Shelter at the YWCA, although appellant had initially resisted this recommendation. The caseworker testified that appellant and the alleged father had a history of domestic violence and that appellant had sustained broken ribs and bruises. Appellant continued to be involved with the alleged father despite the domestic violence. Appellant's whereabouts were unknown at the time of the hearing, as she refused to tell the caseworker where she was living. The caseworker also testified that appellant informed her that appellant was discontinuing the antidepressant medication because appellant did not like the way she felt when taking the medication. The caseworker testified that she encouraged appellant to continue the medication and to discuss this with the psychiatrist as well as to continue services with the psychiatrist. The caseworker also testified that appellant had not participated in LCCS services since March 1999. The caseworker further testified that Nicholas has had no feeding or failure-to-thrive problems since he was removed from appellant's care. The caseworker testified that it is in Nicholas's best interests that he be adopted.

The family intervention coordinator at the Battered Women's Shelter at the YWCA testified that although appellant completed a parenting theory class, appellant was unable to put the theory into practice.

On October 4, 1999, the trial court entered a judgment entry awarding permanent custody of Nicholas to LCCS. Appellant filed a timely notice of appeal.

**446**

■ In her assignment of error, appellant argues that the trial court erred in finding that granting the motion for permanent custody was in the best interest of Nicholas. This court finds no merit in this assignment of error.

R.C. 2151.414(E)[2] requires the trial court to find that the child cannot be placed with either of his or her parents within a reasonable time or should not be

---

2. R.C. 2151.414(E) provides:

"(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

"(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

"(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

"(3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;

"(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

"(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;

"(6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 or under section 2903.16, 2903.21, 2903.34, 2905.01, 2905.02, 2905.03, 2905.04, 2905.05, 2907.07, 2907.08, 2907.09, 2907.12, 2907.21, 2907.22, 2907.23, 2907.25, 2907.31, 2907.32, 2907.321, 2907.322, 2907.323, 2911.01, 2911.02, 2911.11, 2911.12, 2919.12, 2919.24, 2919.25, 2923.12, 2923.13, 2923.161, 2925.02, or 3716.11 of the Revised Code and the child or a sibling of the child was a victim of the offense or the parent has been convicted of or pleaded guilty to an offense under section 2903.04 of the Revised Code, a sibling of the child was the victim of the offense, and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child.

"(7) The parent has been convicted of or pleaded guilty to one of the following:

"(a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially

placed with the parents once the court has determined by clear and convincing evidence that one or more of the enumerated factors exist. Once the trial court finds from all relevant evidence that one of the enumerated factors exists, it then must consider whether permanent commitment is in the best interest of the child.

---

equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;

"(b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;

"(c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;

"(d) An offense under section 2907.02, 2907.03, 2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;

"(e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.

"(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.

"(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

"(10) The parent has abandoned the child.

"(11) The parent has had parental rights involuntarily terminated pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code with respect to a sibling of the child.

"(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.

"(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.

"(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

"(15) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.

"(16) Any other factor the court considers relevant."

R.C. 2151.414(D).[3] Only then may it grant permanent custody of the child to the agency.

On appeal, this court must determine whether the lower court complied with the statutory requirements of R.C. 2151.353 and 2151.414 and whether there was sufficient evidence to support a finding by clear and convincing evidence that one or more of the factors listed in R.C. 2151.414(E) exist. Permanent custody may not be granted unless the trial court finds clear and convincing evidence that one or more of the enumerated factors in R.C. 2151.414(E) exist. *In re William S.* (1996), 75 Ohio St.3d 95, 101, 661 N.E.2d 738. Clear and convincing evidence is that level of proof that would cause the trier of fact to develop a firm belief or conviction as to the facts to be proven. *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus. The trial court must consider the best interests of the child by examining the factors listed in R.C. 2151.414(D). An appellate court will not reverse a trial court's determination concerning parental rights and child custody unless the determination is not supported by sufficient evidence to meet the clear and convincing standard of proof. *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 368, 18 OBR 419, 425–426, 481 N.E.2d 613, and *In re Ball* (1982), 5 Ohio App.3d 56, 58, 5 OBR 152, 154–155, 449 N.E.2d 490.

This court has thoroughly reviewed the entire record in this case. Upon consideration of the law and of the entire record of the proceedings in the trial court, this court finds that there was clear and convincing evidence presented at the hearing to support the trial court's decision. The evidence clearly supports the trial court's award of permanent custody and the trial court's decision that permanent commitment was in Nicholas's best interest.

---

3. R.C. 2151.414(D) provides:

"(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;

"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

"(3) The custodial history of the child, including whether the child has been in the temporary custody of a public children services agency or private child placing agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;

"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

"(5) Whether any of the factors in divisions (E)(7) to (12) of this section apply in relation to the parents and child."

Accordingly, appellant's assignment of error is found not well taken.

On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the court costs of this appeal.

*Judgment affirmed.*

MELVIN L. RESNICK and PIETRYKOWSKI, JJ., concur.