OPINION
{¶ 1} B.W. ("mother"), appellant, appeals from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, in which the court granted the motion of Franklin County Children Services ("FCCS"), appellee, for permanent court commitment ("PCC").
 {¶ 2} R.L. is the daughter of mother, and was born on September 16, 2001. On January 21, 2004, complaints were filed alleging R.L. and her two maternal half-siblings *Page 2 
to be dependent and/or neglected. Temporary orders of custody were issued on January 22, 2004. On March 4, 2004, R.L.'s half-sister was found to be a dependent minor, and on March 5, 2004, R.L. and her half-brother were also adjudicated dependent. As a result, temporary custody of the children was granted to FCCS. A case plan was filed on March 5, 2004. In June 2005, FCCS filed motions for PCC regarding all three of mother's children.
 {¶ 3} A trial on FCCS' motions for PCC was commenced, and, on May 15, 2006, the trial court granted the motions. Mother appealed the judgments, and the cases were consolidated for purposes of appeal. On August 9, 2006, FCCS moved to vacate the permanent custody order as to R.L., due to failure of service of process upon R.L.'s putative father, J.L. The trial court granted FCCS' motion to vacate, and on August 30, 2006, the appeal relating to R.L. was voluntarily dismissed. The permanent custody decisions involving R.L.'s half-siblings were affirmed by this court in In re W.A., Franklin App. No. 06AP-485, 2006-Ohio-5750.
 {¶ 4} On September 11, 2006, FCCS filed an amended motion for PCC. A three-day trial was held on FCCS' motion, and on December 21, 2006, the trial court granted permanent custody of R.L. to FCCS.[1] Mother appeals, assigning the following assignment of error:
 The Court committed error by finding by clear and convincing evidence that it is in the best interests of the minor child to permanently terminate Appellant's parental rights and grant permanent custody to Franklin County Children's Services. *Page 3 
 {¶ 5} Mother argues in her assignment of error that the trial court erred in granting the motion for PCC. At the onset, we note that mother has failed to cite any legal authority in support of her assignment of error. According to App.R. 12(A)(2), we may disregard an assignment of error if an appellant fails to cite to any legal authority in support of an argument as required by App.R. 16(A)(7). See, e.g., State ex rel.Petro v. Gold, 166 Ohio App.3d 371, 392, 2006-Ohio-943, appeal not allowed, 110 Ohio St.3d 1439, 2006-Ohio-3862, reconsideration denied,111 Ohio St.3d 1418, 2006-Ohio-5083. We further note that the sum and substance of mother's brief does not necessarily relate to her stated assignment of error. Nevertheless, in the interest of justice, we will address the merits of this appeal.
 {¶ 6} A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence. In re Andy-Jones, Franklin App. No. 03AP-1167,2004-Ohio-3312. Judgments supported by some competent, credible evidence going to all essential elements of the case are not against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co.
(1978), 54 Ohio St.2d 279, paragraph one of the syllabus. We therefore must weigh the evidence in order to determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. State v.Thompkins (1997), 78 Ohio St.3d 380, 387, citing State v. Martin (1983),20 Ohio App.3d 172, 175. Reversing a judgment on manifest weight grounds should only be done in exceptional circumstances, when the evidence weighs heavily against the judgment. Thompkins, at 387, citingMartin. *Page 4 
 {¶ 7} In order to terminate appellant's parental rights, FCCS was required to demonstrate by clear and convincing evidence that (1) one of the four factors enumerated in R.C. 2151.414(B)(1) applies; and (2) termination is in the child's best interest. In re Gomer, Wyandot App. No. 16-03-19, 2004-Ohio-1723. Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. In re Abram, Franklin App. No. 04AP-220, 2004-Ohio-5435.
 {¶ 8} On appellate review, permanent custody motions supported by competent, credible, clear, and convincing evidence addressing all the essential elements of the case will not be reversed as against the manifest weight of the evidence. In re Nicholas H. (2000),137 Ohio App.3d 442; In re Poke, Lawrence App. No. 05CA15, 2005-Ohio-5226. Further, in determining whether a judgment is against the manifest weight of the evidence, the reviewing court is guided by the presumption that the findings of the trial court are correct. In re Brofford (1992),83 Ohio App.3d 869, citing Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. at 80; Abram, supra. Here, competent, credible, clear, and convincing evidence supports the trial court's judgment awarding permanent custody of R.L. to FCCS.
 {¶ 9} R.C. 2151.414(B)(1) provides:
 (1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division *Page 5 
 (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 (b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.
 {¶ 10} In this case, the trial court determined: (1) pursuant to R.C.2151.414(B)(1)(a), R.L. could not or should not be placed with either parent within a reasonable time; (2) pursuant to R.C. 2151.414(B)(1)(b), R.L. had been abandoned by her father; and (3) pursuant to R.C.2151.414(B)(1)(d), R.L. had been in the temporary custody of FCCS for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999. Mother does not dispute that R.L. had been in the custody of FCCS for 12 months or more of a consecutive 22-month period prior to the date the PCC motion was filed, thereby satisfying R.C.2151.414(B)(1)(d). Rather, mother takes issue *Page 6 
with the trial court's finding pursuant to R.C. 2151.414(B)(1)(a) that R.L. could not be placed with her within a reasonable period of time, and its corollary analysis under R.C. 2151.414(E).
 {¶ 11} The record is undisputed as to the fact R.L. had been in the custody of FCCS for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999.[2] The trial court, therefore, correctly concluded that the requirement of R.C. 2151.414(B)(1)(d) had been satisfied. Given that determination, however, the trial court was not obligated to address whether R.L. could not or should not be placed with either parent within a reasonable time. In In re Damron, Franklin App. No. 03AP-419, 2003-Ohio-5810, at ¶ 9, we explained:
 The plain language of R.C. 2151.414(B)(1)(a) reveals that this subsection is only triggered when none of the remaining three subsections are triggered. In the present case, subsection (d) was triggered because, as appellant does not dispute, the Damron children had been in FCCS' custody for the requisite time period. Because the facts trigger subsection (d), they cannot and do not trigger subsection (a). As such, it was unnecessary for the court to analyze whether or not the Damron children could be placed with either of their parents within a reasonable time, or should be placed with either parent, under R.C. 2151.414(B)(1)(a). Id. Accordingly, the court did not err in failing to consider the factors contained in R.C. 2151.414(E)(7) to (11).
See, also, In re C.C., Franklin App. No. 04AP-883, 2005-Ohio-5163, at ¶ 52 (citations omitted). Because the trial court sub judice properly determined, by clear and convincing evidence, that R.L. had been in the custody of FCCS for the requisite period of time under R.C.2151.414(B)(1)(d), we need not consider its extraneous finding as to R.C. *Page 7 2151.414(B)(1)(a). In re Damron, supra; see, also, In re L.M., Franklin App. No. 06AP-534, 2007-Ohio-1596, at ¶ 27.
 {¶ 12} Turning our attention to the second part of the analysis, once having determined that R.L. had been in the custody of FCCS for 12 months of a consecutive 22-month period, the trial court must then determine whether permanent custody is in the best interest of the child by considering all relevant factors, including, but not limited to the five factors listed in R.C. 2151.414(D):
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
As to the fifth factor listed above, the factors set forth in R.C.2151.414(E)(7) through (11) include: (1) whether the parents have been convicted of or pled guilty to various crimes; (2) whether medical treatment or food has been withheld from the child; (3) whether the parent has placed the child at a substantial risk of harm due to alcohol or drug abuse; (4) *Page 8 
whether the parent has abandoned the child; and (5) whether the parent has had parental rights terminated with respect to a sibling of the child.
 {¶ 13} Here, the trial court's decision indicates it considered the necessary best interest factors. Although mother's stated assignment of error challenges the trial court's best interest determination, her brief fails to reference R.C. 2151.414(D) and the phrase "best interest" only appears once (in the last sentence of the conclusion). Additionally, the pages of the trial court's decision cited by mother as containing error regard the court's analysis under R.C. 2151.414(E), which we found irrelevant due to R.C. 2151.414(B)(1)(d)'s applicability. To the extent mother's brief can be construed as properly attacking the court's best interest determination, only the first and fourth factors are arguably raised therein. Given that our own review of the record supports the trial court's findings that it was in the best interest of R.L. to grant PCC to FCCS, we will limit our discussion to those factors.
 {¶ 14} With respect to R.C. 2151.414(D)(1), mother points out "there is no question that the child has bonded with her mother." (Mother's brief at 9.) In its decision, the trial court found that R.L. was bonded with her mother, but also found that R.L. was bonded with her foster mother and siblings as well. Jajuana McLean ("McLean"), the family's caseworker, testified that while R.L. is bonded to her mother, she no longer cries at the end of a visit. (Dec. 12, 2006 Tr. at 35-36.) McLean further testified that R.L. is "very bonded" with her siblings, and all three children would be "devastated" if they were to be separated from each other, as "the only consistency they've had their entire life is *Page 9 
each other." Id. at 38. Aria Smith, the guardian ad litem ("GLA") appointed for R.L., echoed the foregoing, despite R.L.'s bond to her mother. Id. at 112,[3] 121.
 {¶ 15} Regarding the factor under R.C. 2151.414(D)(4), mother asserts that she has remedied the issues of employment and housing since the original PCC trial in May 2006, and these subsequent remedial measures compel reversal of the trial court's decision to grant permanent custody of R.L. to FCCS. We disagree. Mother is, in essence, arguing that her recent employment and current living arrangement, which represent changes in circumstance since the original PCC trial held in May 2006, should wholly displace her lack of initiative prior thereto. The law, however, does not provide for such a myopic view. And, even if we were to limit our consideration to the changes made by mother within the time period she advocates, these changes, unfortunately, are insufficient to alter the outcome.
 {¶ 16} McLean testified that despite mother's recent employment and new living arrangement, McLean did not consider mother as having obtained stable, independent housing and a steady income. Id. at 20-21, 23-26. The GAL testified that, regardless of mother's recent improvement in these areas, PCC would still be in R.L.'s best interest due to mother's demonstrated lack of stability and permanency. Id. at 115 ("With all due respect to her testimony and her circumstances of today, the history of this case tells me that I cannot count on that being in the same position tomorrow").
 {¶ 17} While it is true that mother was employed at the time of trial in this matter, she had only been employed in an entry-level position for a few weeks. Her last previous *Page 10 
job was in October 2006, when she was hired to campaign for Issue 3; this was her only employment in the preceding seven months. Id. at 24. Furthermore, despite mother's claim that she obtained stable housing, the record reflects that she was living with her boyfriend, who was the only signatory to the lease agreement for the house rented from his former employer. Although mother testified that she pays her share of the rent and utilities, the fact remains that her housing is dependent upon her relationship with her boyfriend, which, if it were to end, would leave her in a precarious position (without housing). See, e.g.,In re S.B., Cuyahoga App. No. 85560, 2005-Ohio-3163, at ¶ 14.
 {¶ 18} For all the above reasons, we find there was clear and convincing evidence that PCC was in the best interest of R.L. The trial court's decision, on this issue and in all other respects, was not against the manifest weight of the evidence. Therefore, mother's assignment of error is overruled.
 {¶ 19} Accordingly, mother's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
 KLATT and WHITESIDE, JJ., concur.
WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] J.L. was served notice of the hearing by publication, but did not appear. The record also discloses that J.L. did not have any contact with R.L. after her placement with FCCS, and the record is unclear as to the degree of contact prior thereto.
[2] Mother conceded to this fact in In re W.A., supra, at 6.
[3] "[R.L.] derives a considerable sense of self as a big sister and to lose a parent is horrible. To lose siblings as well, and in this instance I think for [R.L.] would be even worse because the parent has been an intermittent factor where as the siblings are constant." *Page 1