OPINION
{¶ 1} Appellant, S.M., appeals from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, terminating her parental rights and awarding permanent custody of her son, T.L., to Franklin County Children Services ("FCCS").
 {¶ 2} T.L. was born on February 11, 2004, and on March 11, 2004, FCCS filed a complaint alleging T.L. to be a dependent minor child pursuant to R.C. 2151.04(C). The complaint alleged appellant was addicted to heroin, lacked parenting skills, and that there *Page 2 
was a history of domestic violence between appellant and father. The complaint also alleged that father was drug dependent, lacked parenting skills, and that his whereabouts were unknown at the time of filing the complaint. T.L. was removed from the home on March 18, 2004.
 {¶ 3} FCCS devised a case plan to help appellant and father with their issues and attempt reunification with T.L. On May 27, 2004, T.L. was adjudicated a dependent minor child, and temporary custody was awarded to FCCS. On August 1, 2005, FCCS filed a motion for permanent custody pursuant to R.C. 2151.353(A)(4), 2151.413, and 2151.414. Hearings on the motion were held on December 7, 2006, January 9, and January 10, 2007. Appellant's mother, appellant's sister, appellant's drug counselor, the FCCS caseworker, and the guardian ad litem testified at the hearings.[1] On March 21, 2007, the trial court granted FCCS' motion for permanent custody of T.L. This appeal followed, and appellant assigns a single assignment of error:
 FIRST ASSIGNMENT OF ERROR:
 THE TRIAL COURT'S DECISION TO GRANT PERMANENT CUSTODY OF THE MINOR CHILD T.L. TO FRANKLIN COUNTY CHILDREN SERVICES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 4} It is well recognized that the right to raise a child is a basic and essential civil right. In re Hayes (1997), 79 Ohio St.3d 46. A parent must be given every procedural and substantive protection the law allows prior to parental rights being terminated. Id. Due process includes a hearing upon adequate notice, assistance of *Page 3 
counsel, and under most circumstances, the right to be present at the hearing. In re Thompson (Apr. 26, 2001), Franklin App. No. 00AP-1358.
 {¶ 5} A court may grant permanent custody of a child to an agency if it finds by clear and convincing evidence that it is in the child's best interest to grant permanent custody to the agency and that any of the factors in R.C. 2151.414(B)(1) apply. In the Matter of O.J., Franklin App. No. 05AP-810, 2006-Ohio-286, citing In re Gomer, Wyandot App. No. 16-03-19, 2004-Ohio-1723. Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. In re Abram, Franklin App. No. 04AP-220, 2004-Ohio-5435. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. Id.
 {¶ 6} A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence. In re Andy-Jones, Franklin App. No. 03AP-1167,2004-Ohio-3312. "Judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." In the Matter of O.J., at ¶ 11, citing In re Brown, Franklin App. No. 03AP-969, 2004-Ohio-3314. Further, in determining whether a judgment is against the manifest weight of the evidence, the reviewing court is guided by the presumption that the findings of the trial court are correct. In re Brofford (1992), 83 Ohio App.3d 869, citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. "The underlying rationale of giving deference to the *Page 4 
findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. at 80; In reAbrams, supra.
 {¶ 7} According to appellant, FCCS moved for permanent custody pursuant to R.C. 2151.353(A)(4),[2] which requires analysis under R.C.2151.414(E).[3] Appellant *Page 5 
contends that because the trial court did not make an R.C. 2151.414(E) analysis, nor state that any of the factors of R.C. 2151.414(E) clearly exist, it did not follow the procedures for granting permanent custody under R.C. 2151.353(A), and therefore, its findings are against the manifest weight of the evidence.
 {¶ 8} Though appellant asserts analysis under R.C. 2151.414(E) was required, FCCS contends it pursued this matter under R.C.2151.414(B)(1)(d) by pleading that the child has been in the custody of FCCS for 12 out of 22 months and permanent custody is in the best interest of the child. Once it established the 12 of 22 months factor, FCCS argues it need only establish that permanent custody is in the best interest of the child, and need not demonstrate that the child cannot or should not be placed with the parents. Therefore, according to FCCS, it was not required to prove any of the R.C. 2151.414(E) factors.
 {¶ 9} We note initially the trial court's decision states that the motion for permanent custody should be granted as it has been established by clear and convincing evidence that such is in the best interest of the child. The entry further states, "[t]he court *Page 6 
finds that the child cannot be placed with either parent within a reasonable period of time, or should not be placed with the parents pursuant to R.C. 2151.353(A)(4) and 2151.414(E) as more specifically set forth in the above findings of fact." (Mar. 21, 2007 Decision, 9.) Thus, appellant's assertion that the trial court did not engage in any analysis of R.C. 2151.414(E) is misplaced.
 {¶ 10} Further, R.C. 2151.414(B) provides in part:
 (1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 (b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 11} Despite appellant's arguments to the contrary, this court has recently stated that where the trial court correctly concluded that the requirement of R.C. 2151.414(B)(1)(d) had been satisfied, the trial court was not obligated to address whether *Page 7 
the child could not or should not be placed with either parent within a reasonable time. In the Matter of R.L., Franklin App. No. 07AP-36,2007-Ohio-3553. As explained in In re Damron, Franklin App. No. 03AP-419, 2003-Ohio-5810, at ¶ 9:
 * * * In the present case, subsection (d) [of R.C. 2151.414(B)(1)] was triggered because, as appellant does not dispute, the Damron children had been in FCCS' custody for the requisite time period. Because the facts trigger subsection (d), they cannot and do not trigger subsection (a). As such, it was unnecessary for the court to analyze whether or not the Damron children could be placed with either of their parents within a reasonable time, or should be placed with either parent, under R.C. 2151.414(B)(1)(a). Id. Accordingly, the court did not err in failing to consider the factors contained in R.C. 2151.414(E)(7) to (11).
 {¶ 12} Pursuant to R.C. 2151.414(B)(1)(d), since T.L. was in temporary custody for more than 12 months, the trial court was only required to find by clear and convincing evidence that permanent custody was in the child's best interest. In the Matter of Danni-Jo Nice (2001),141 Ohio App.3d 445 (holding that the court was not required to make a finding that the child could not or should not be placed with either parent within a reasonable period of time since R.C. 2151.414(B)(1)(d) was satisfied); In the Matter of K.R., Clark App. No. 2006-CA-15,2006-Ohio-5801 (noting that when R.C. 2151.414(B)(1)(d) applies, the court is not required to make a determination that the child cannot or should not be returned to either parent within a reasonable amount of time); In re C.H., Cuyahoga App. No. 84943, 2005-Ohio-1013 (holding that the trial court need not determine that the child cannot or should not be placed with either parent within a reasonable time when the child has been in the temporary custody of an agency for more than 12 of the last 22 months). *Page 8 
 {¶ 13} It is undisputed in the case sub judice that R.C.2151.414(B)(1)(d) has been satisfied by clear and convincing evidence. Because the trial court properly determined by clear and convincing evidence that T.L. has been in the custody of FCCS for the requisite period of time under R.C. 2151.414(B)(1)(d), we need not consider its findings with respect to the R.C. 2151.414(E) factors. See, e.g.,R.L., supra. We now turn our attention to the trial court's determination that granting permanent custody to FCCS is in the best interest of the child. In assessing the best interest of the child, the court is to consider all relevant factors, including, but not limited to, the following: (1) the interaction and inter-relationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in divisions (E)(7) to (11) apply in relation to the parents and child. As to the fifth factor listed above, the factors set forth in R.C. 2151.414(E)(7) through (11) include: (1) whether the parents have been convicted of or pled guilty to various crimes; (2) whether medical treatment or food has been withheld from the child; (3) whether the parent has placed the child at a substantial risk of harm due to alcohol or drug abuse; (4) whether the parent has abandoned the child; and (5) whether the parent has had parental rights terminated with respect to a sibling of the child. *Page 9 
 {¶ 14} The trial court's decision indicates that it considered the necessary best interest factors. Appellant does not, however, appear to take issue with the best interest factors, per se, as her brief focuses only on analysis of R.C. 2151.414(E). Our review of the record supports the trial court's findings that it was in the best interest of T.L. to grant permanent custody to FCCS.
 {¶ 15} Upon FCCS' involvement, a case plan was initiated on April 2, 2004, with the goal of reunification. The case plan required the parents to meet T.L.'s needs, to complete mental health, drug and alcohol assessments, to complete drug screens, to complete parenting classes, attend AA or NA meetings, as well as obtain and maintain stable housing and employment. The case plan also required the parents to follow any and all recommendations arising out of the mental health, drug and alcohol assessments. Additionally, father was required to complete a domestic violence assessment, follow any recommendations resulting therefrom, and complete an anger management program.
 {¶ 16} The FCCS caseworker made referrals to assist appellant and father in meeting the case plan requirements, and provided bus passes for visitation, to complete drug screens, and to attend counseling programs. There were only two parts of the case plan that appellant completed, namely, a drug and alcohol assessment at NetCare in 2004, and parenting classes at Catholic Social Services. However, despite completing the NetCare assessment, appellant did not follow the recommendations resulting therefrom. Father has not complied with any portion of the case plan. *Page 10 
 {¶ 17} By her own admission, appellant has been addicted to heroin since she was 12 years old.[4] Appellant's addiction to heroin is severe and in the past, she has also used cocaine, crack, acid, Oxycontin, Percocet, Vicodin, and Valium. The last time she used heroin was September 3, 2006, and the last time she used one of the other previous mentioned drugs was anywhere from three to five years ago. To avoid using heroin, appellant has tried marijuana and methadone. Appellant's last marijuana use was six to eight months prior to the hearings. At the time of the hearings, appellant was enrolled in a methadone program at CompDrug and had been so enrolled since August 29, 2006. Appellant goes to CompDrug six days a week to receive methadone.
 {¶ 18} Appellant testified she began drug treatment programs at the age of 13, but quit at 18 years of age when she was no longer required to comply with her probation. Despite entering various treatment programs, even during her pregnancy, appellant admitted that she would ultimately begin using again. According to appellant, the three months prior to the hearings had been her longest period of sobriety, although she had not completed a drug screen for FCCS since December 30, 2006.
 {¶ 19} Appellant described her living arrangements, which established that prior to moving into an apartment on November 10, 2006, she did not have stable housing, and since the time FCCS has been involved, appellant has stayed at various homeless shelters, or with friends, or family. In short, appellant has not maintained stable housing. Appellant's longest period of employment in the last three years has been about two months. On December 7, 2006, the first day of the hearings, appellant was working *Page 11 
approximately 25 to 39 hours per week at Dial America where she had been since October 2006. However, as of January 9, 2007, the second day of the hearings, appellant was no longer employed there, and was working at Ann's Pizza. Appellant explained she did not work specific hours there, and had not yet provided any employment verification to FCCS because she was paid "under the table." Appellant had also begun classes at Columbus State Community College as of January 2, 2007.
 {¶ 20} Throughout T.L.'s time with FCCS, appellant believed she missed approximately 25 percent of the visits, and by her own admission, did not visit at all from May 2006 to October 2006 due to her drug use. When asked to describe her relationship with T.L., appellant said she did not think that he knew her as "mother," but that there definitely "could be a stronger bond." (Dec. 7, 2006 Tr. at 66.) Appellant indicated T.L. does not call her "mom," but rather, refers to his foster mother as "mom," and that he is more bonded with his foster mother than he is with appellant.
 {¶ 21} T.L. was placed with his foster family on March 18, 2004, when he was removed from appellant's home, and has remained with his foster family since that date. According to the foster mother R.B., T.L. has many special needs including Sensory Integration Disorder, difficulty with vestibular processing, tactile difficulties, and speech delay. For these conditions, he receives weekly occupational and speech therapy and sees a child psychiatrist weekly as well. T.L. has also been diagnosed with ADHD and Impulse Control Disorder. T.L. is on medication for his needs, and also attends a special needs preschool two days a week at Childhood League Center, an MRDD based early intervention program. *Page 12 
 {¶ 22} Both foster parents have educated themselves about T.L.'s conditions and have taken a 12-week program titled, "It Takes Two to Talk" to enable them to better communicate with T.L. The foster parents also work with T.L. on a daily basis at home for his speech issues. According to R.B., T.L. tends to overreact to things. A "`no' to [T.L.] can cause an absolute emotional meltdown marked by aggressiveness, destructiveness, hitting, kicking, throwing, flailing his body on the floor, becoming very rigid." (Jan. 9, 2007 Tr. at 43.) Because of T.L.'s physical strength, R.B. explained that these episodes can be harmful, and can last anywhere from a few minutes to a one-half hour. These episodes typically occur two to four times per day.
 {¶ 23} Though R.B. has invited appellant to attend various therapy appointments and offered transportation, appellant has declined such offers. Appellant also declined R.B.'s offer for appellant to stay at their home while she was between housing so that appellant would "have a safe place to stay off the streets to enable her to stay clean" between programs. Id. at 47. Appellant is permitted to call anytime, but R.B. testified that appellant rarely calls to talk to T.L. Appellant indicated it was difficult to communicate with T.L. because of his speech difficulties. According to R.B., T.L. is familiar with appellant and knows her by her first name. T.L. refers to his foster parents as "mommy" and "daddy" and interacts well with his three foster siblings. The foster parents are interested in adopting T.L. and are committed to meeting his special needs.
 {¶ 24} Lynne Rodriguez, the FCCS caseworker assigned to T.L. from March 2004 to October 2004, and then again beginning in January 2006, also testified at the hearings. According to Ms. Rodriguez, prior to entering the program with CompDrug, appellant has *Page 13 
not successfully completed drug and alcohol treatment without a subsequent relapse. Of the 151 urine screens given to appellant, 47 were completed and some of those were cause for concern. Appellant has not had stable housing throughout this matter, nor has she maintained stable employment, despite her "good intentions of wanting to work." Id. at 114. According to Ms. Rodriguez, T.L. calls appellant by her first name, and separates easily from her at the end of the visits. T.L is "somewhat bonded" to appellant, in that T.L. knows who she is and they have fun together at the visits. Id. at 125. T.L. calls his foster mother "mommy," and appears to be more bonded with his foster mother, even going to his foster mother for needs during his visits with appellant. T.L. is bonded to his foster siblings as well. In conclusion, it was Ms. Rodriguez's recommendation that FCCS be granted permanent custody of T.L.
 {¶ 25} Angela Kirk, appellant's drug counselor at CompDrug, testified that appellant has made a "big improvement" since her second enrollment in the CompDrug program beginning in August 2006.[5] (Jan. 10, 2007 Tr. at 110.) However, it would be at least a year of drug free urine screens before she would recommend that appellant be weaned off of methadone. Ms. Kirk has also recommended that appellant attend the 12-step meetings as part of her program, but appellant has not taken part in this.
 {¶ 26} Both appellant's sister and mother testified that appellant exhibits appropriate behavior when around her nieces and nephews. The guardian ad litem testified that because of T.L.'s special needs, his treatment protocol, and the length of *Page 14 
time the foster family has had to bond with T.L., it was his opinion that "it is definitely in [T.L.'s] best interest" for the court to grant permanent custody to FCCS. Id. at 156.
 {¶ 27} In the present case, the trial court's decision indicates it considered the necessary best interest factors. Upon review of the record, it is clear that the record supports the trial court's finding that granting the motion for permanent custody is in T.L.'s best interest. The trial court concluded that the child's need for legally secure placement could not be achieved without awarding permanent custody to FCCS. The trial court further found that while appellant and T.L. are barely bonded, T.L. is bonded with his foster parents and their children. The trial court also determined that the foster family is meeting the child's special needs, those of which his mother has either little interest or training to meet.
 {¶ 28} The testimony of both Ms. Rodriguez and the guardian ad litem supports the trial court's determination. Specifically, Ms. Rodriguez testified that T.L. is very bonded to his foster mother and is doing well in foster placement. Though the record indicates appellant interacted appropriately with T.L. once appellant starting visiting him again in October 2006, T.L. easily detaches from appellant after the visit and goes to his foster mother for needs during the visit. Though too young to express his desire regarding placement, the guardian ad litem recommended that permanent custody be granted to FCCS so that T.L. could be adopted.
 {¶ 29} Regarding custodial history, with the exception of his first month of life, T.L. has not lived with appellant. Rather, he has lived with his foster parents and their children from the time he was removed from appellant's home. The testimony indicates the foster *Page 15 
family is a possible adoptive placement for T.L., and permanent custody would allow such a placement for him.
 {¶ 30} The record makes clear that appellant has a serious drug abuse problem. Despite her apparent progress in the months preceding the hearings, there is no question that in the just under three years of T.L.'s life, in which he has spent in foster care, appellant has not demonstrated the ability to address her problems and to provide T.L. with a secure home. Appellant had time to correct the situation that caused T.L's removal from the home, but instead, those directives, until recently, were ignored.
 {¶ 31} Because the trial court's judgment is supported by the evidence in the record, we overrule appellant's single assignment of error and affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.
Judgment affirmed.
FRENCH and WHITESIDE, JJ., concur.
WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Though served with notice of the hearings, father did not appear or take part in the proceedings.
[2] R.C. 2151.353 provides:
(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
* * *
(4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 [2151.41.4] of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section2151.414 [2151.41.4] of the Revised Code that the permanent commitment is in the best interest of the child. If the court grants permanent custody under this division, the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding.
[3] The factors to consider under subsection of (E) of R.C. 2151.414
to determine whether or not a child could not or should not be placed with either parent within a reasonable period of time are summarized as follows:
(1) Following the placement of the child outside the child's home the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.
(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time.
(3) The parent committed any abuse against the child, caused the child to suffer any neglect, or allowed the child to suffer any neglect;
(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;
(6) The parent has been convicted of or pleaded guilty to an offense and the child or a sibling of the child was a victim of the offense or the parent has been convicted of or pleaded guilty to an offense under section 2903.04 of the Revised Code, a sibling of the child was the victim of the offense, and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child.
(7) The parent has been convicted of or pleaded guilty to one of the offenses listed in under (7);
(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body;
(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan has been issued requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
(10) The parent has abandoned the child.
(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child.
(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.
(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.
(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
(15) The parent has committed abuse as against the child or caused or allowed the child to suffer neglect, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.
(16) Any other factor the court considers relevant.
[4] Appellant was twenty-one years old at the time of the hearings.
[5] Appellant initially enrolled in the CompDrug program in November 2004, but was officially terminated in June 2005 because she did not complete the program. *Page 1